PEOPLE, PLAINTIFF AND APPELLEE, *v.* ALCAIDE ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Guayama in a Prosecution for Conspiracy.

No. 1399.—Decided March 15, 1921.

CONSPIRACY—PLEADING.—The general rule regarding an information charging a conspiracy is that all of the material facts and circumstances included in the definition of the crime must be expressed therein, and that if any essential element of the crime is omitted, such omission can not be supplied by the spirit of the law or by inference. The charge must be made directly and must not be inductive or in the manner of a recital.

ID.—ID.—PENAL SYSTEM OF PORTO RICO—COMMON LAW.—In Porto Rico as in the Federal courts no crimes exist except those expressly defined by statute. Common law crimes exist in neither jurisdiction.

ID.—ID.—An information charging a conspiracy based on subdivision 4 of section 62 of the Penal Code, the crime consisting in having defrauded a minor of rights as an acknowledged natural child, is fatally defective if it does not express the property of which the minor was going to be deprived by virtue of the conspiracy, for to deprive one of the right of filiation does not always amount to depriving him of property.

ID.—ID.—The charge that the defendants conspired to procure, corruptly and unlawfully, that a district court adjudge the nullity of the acknowledgment

of a natural child made in favor of a minor, must be governed by the principles laid down in *People* v. *Torregrosa,* 24 P. R. R. 12, for that act by itself does not tend to pervert or obstruct public justice or the due administration of the law, as required by subdivision 5 of section 62 of the Penal Code, except, as was said in that case, in the general sense in which any illegal act may be perversive of justice.

The facts are stated in the opinion.

Messrs. *Alvarez Nava & Domínguez, F. Soto Gras, M. Guerra* and *F. Cervoni* for the appellants.

Messrs. *E. Benítez Castaño, A. R. Barceló* and *M. Benítez Flores* for defendant María Morales.

Mr. *José E. Figueras, Fiscal,* for the appellee.

Mr. Justice Wolf delivered the opinion of the court.

This was a prosecution for conspiracy wherein a certain number of defendants were convicted and appealed. Of the various errors assigned, the first is that the information does not state a crime, a question duly raised in the trial court by demurrer. Because of this basic error we feel bound to reverse the judgment and hence it will be unnecessary to examine the other errors assigned.

Before examining the information in question it will be well first to examine some of the general principles applicable to informations or indictments for conspiracy.

In *Pettibone* v. *United States,* 148 U. S. 197, a case of conspiracy, the court said:

"The general rule in reference to an indictment is that all the material facts and circumstances embraced in the definition of 'offense' must be stated, and that if any essential element of the crime is omitted, such omission cannot be supplied by intendment or implication. The charge must be made directly and not be inferential or by way of recital."

This case has been cited a great deal and also to the effect that the conspiracy, and not the overt acts in pursuance thereof, constitutes the gist of the offense. In this latter regard, of course, section 63 of our statute (cited hereinafter) prevails. Section 5440 of the Revised Statutes of the United

States, involved in the *Pettibone Case* and similar to section 63, *supra,* has in *Hyde* v. *United States,* 225 U. S. 347, been held to make an overt act necessary to constitute an offense. With this limitation the *Pettibone Case* and those which it cites are authority to the effect that the conspiracy itself must be clearly charged.

Before a man can be punished his case must be plainly and unmistakably within the statute. *United States* v. *Brewer,* 139 U. S. 278; *United States* v. *Lacher,* 134 U. S. 628, and *France* v. *United States,* 164 U. S. 683, where it was said:

"If it be urged that the act of these plaintiffs in error is within the reason of the statute the answer must be that it is so far outside of its language that to include it would be to legislate and not to construe legislation."

We have discussed these principles in *People* v. *Torrellas,* 10 P. R. R. 514; *People* v. *Torregrosa et al.,* 24 P. R. R. 12, and other cases.

In Porto Rico as in the United States courts there are no crimes unless directly defined by statute. In neither jurisdiction do common-law offenses exist. *United States* v. *Walsh,* 5 Dill. 58; *United States* v. *Britton,* 108 U. S. 199; *People* v. *Ruíz, ante,* page 68; Penal Code, section 5.

The information is in three counts, the first of which reads as follows:

"That during the years 1894 to 1898, or thereabouts, Simón A. Alcaide and María Morales maintained amorous relations and cohabited for several years in the town of Arroyo, Porto Rico; that during such amorous relations and as a result thereof a female child was born in the said town of Arroyo and recorded in the civil registry of said town on March 21, 1898, as the natural child of María Morales under the name of María de los Dolores.

"That subsequently, or about the third day of October, 1900, Simón A. Alcaide appeared before the official in charge of the Civil Registry of Arroyo and acknowledged María de los Dolores to be his natural child and she consequently appeared of record as the ac-

knowledged natural child of Simón A. Alcaide and María Morales by virtue of the certificate of birth and marginal note inserted at page 132 of volume 4 of the Register of Births on file in the Civil Registry of Arroyo, said certificate of birth and marginal note reading literally as follows:

" 'No. 26.—María de los Dolores Morales, Town of Arroyo, Province of Porto Rico.—At 9 p. m. of March 21, 1898, María Morales, resident of Maunabo, Province of Porto Rico, 23 years of age, single, domestic occupations, with residence at Sol street, reported with her child to Pedro Massanet y Esteva, municipal judge, and Miguel Jeannot, Secretary, for the purpose of registering the said child in the civil registry, and in her capacity of natural mother recites: that the said child was born in the deponent's house on December 23, last, at 3 a. m.; that the said child is deponent's natural child; that deponent is a native of Maunabo, Province of Porto Rico, 23 years of age, domestic occupations and with residence in Sol street; that she is the grandchild on the maternal side of Juan Morales, native of Maunabo, now deceased, and of Braulia Soto, native of Maunabo, residing at Sol street; and that she named the child María de los Dolores; all in the presence of the witness Adolfo Soto Díaz, native of this town, married, of age, artisan and with residence in Santa Teresa street, and of the witness Ignacio Guillén, a native of Spain, of age, office clerk, married and residing in Pescado street. This instrument having been duly and fully read and all the persons subscribing thereto having been invited to read the same for themselves, should they so desire, the seal of the municipal court was affixed and the judge and the witnesses signed. Deponent did not write her signature because of her inability so to do, but Zenón Cintrón, of this neighborhood, did so at her request.—I, as Secretary, certify to all the foregoing.—Pedro J. Massanet.—Zenón Cintrón.—Adolfo Soto.—Ignacio Guillén.—Miguel Jeannot.

" 'Marginal note.—On October 3, 1900, at 10 a. m., Simón A. Alcaide Báez, a resident of this town, thirty-five years of age, single, landowner and residing in Morse street of this locality, appeared before José García Salinas, municipal judge, and José Aponte Hernández, and declared: that, pursuant to the provisions of article 131 of the Civil Code in force, he acknowledged the child referred to in the foregoing certificate of birth, namely, María de los Dolores Morales, to be his natural child, her grandparents on the paternal side being Antonio J. Alcaide and Stella Báez, the former being a native of Andalucía and the latter of Arroyo, both deceased, to all of which

he testified before the witnesses Eugenio Cruz de Manattou and Nazario Antonetti, of age and residents of this town, single and employes, who signed together with the deponent and judge.—Attest.—García Salinas.—S. A. Alcaide.—E. C. de Manattou.—Nazario Antonetti.—José Aponte.'

"That several times prior to the filing of this information, Simón A. Alcaide, with the intention and object of depriving his minor daughter of her rights as an acknowledged natural child, sought to procure the annulment of the acknowledgment made by him on October 3, 1900, before the official in charge of the Civil Registry of Arroyo, of her status as such, offering certain sums of money to María Morales, mother of María de los Dolores, to the end that said María Morales might agree to facilitate and put in practice the means whereby the annulment of the act of acknowledgment might be effected; and that such offers and propositions were made to María Morales through Arturo C. López, Alberto E. Vázquez and Rafael Cintrón Lastra, all of whom acted as Simón Alcaide's agents.

"That subsequently or about the month of June, 1915, defendants Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Rafael Cintrón Lastra, Alberto E. Vázquez and Arturo G. López, unlawfully, corruptly and wilfully, with fraudulent intent, conspired, connived, combined, united and agreed to institute proceedings in the District Court of Guayama, P. R., for the purpose of inducing the said court to render judgment holding that Simón A. Alcaide was not the father of María de los Dolores and to decree the nullity of the act of acknowledgment by the said Simón A. Alcaide of his natural daughter María de los Dolores; that for the purpose and with the object of unlawfully defrauding María de los Dolores of her rights as the acknowledged natural child of Simón A. Alcaide, the said defendants, all in unison and of common mind, with the purpose and object of persisting in, continuing and carrying out the conspiracy and the purpose connived by them, presented and filed in the office of the Secretary of the District Court of Guayama on June 30, 1915, a complaint against Simón A. Alcaide, said complaint being signed and sworn to by María Morales and also subscribed to by her attorney Manuel A. Martínez Dávila, and therein the said María Morales, in the name and in representation of her daughter, María de los Dolores, prayed the court to render judgment holding that defendant Simón A. Alcaide was not the father of María de los Dolores and that the act of acknowledgment referred to was null and void; and on July 2 of the same year 1915 Simón A. Alcaide, represented by his attorney,

R. Cintrón Lastra, and in connivance with the latter and with María Morales, Arturo G. López, Alberto E. Vázquez and Manuel A. Martínez Dávila, presented and filed in the office of the Clerk of the District Court of Guayama an answer to the complaint, admitting as true the allegations thereof and agreeing to a judgment by the court as prayed for. The complaint filed reads as follows:

" '*In the District Court of Guayama, P. R.*—María Morales, representing her minor daughter María de los Dolores, plaintiff, *v.* Simón Antonio Alcaide, defendant.—Civil Case No.—.—*Re* Contest of Acknowledgment of a Natural Child.—Complaint.—To the Honorable Court:—Comes now the plaintiff by her attorney and under oath alleges:—1. That she is the mother with *patria potestas* of her minor child María de los Dolores Morales and a resident of Guayama and that the defendant is of age and also a resident of Guayama.—2. That as a consequence of the relations which existed between the mother of the minor plaintiff María Morales, who is single, and a man, also single but whose name need not be here mentioned, with whom she cohabited for some time, the minor plaintiff was conceived and born on December 23, 1897, and registered by the mother of said minor as her natural child in the Civil Registry of Arroyo, P. R., on March 21, 1898.—3. That seven months after the conception of the minor plaintiff and during the pregnancy of the mother of said minor, the mother of the plaintiff became acquainted with the defendant and maintained amorous relations with him.—4. That on October 3, 1900, defendant Simón Antonio Alcaide magnanimously appeared before the clerk of the city council of Arroyo and by a marginal note to the record of birth acknowledged the child María de los Dolores Morales as his daughter without the consent of the mother of the minor plaintiff and knowing that the latter was not his child as in fact she is not, he acknowledging her out of a feeling of charity and affection to said child, who was born while the defendant was living with her mother.— 5. The plaintiff has good reasons for asserting positively that another and not the defendant is the father of the said minor and that merely out of love for the mother and the child did the defendant acknowledge the latter. Wherefore the plaintiff prays the court, in view of the foregoing, to render judgment in due course holding that the defendant Simón Antonio Alcaide is not the father of the minor plaintiff and consequently to decree the nullity of the acknowledment by said defendant of the minor plaintiff in the Civil Registry of Arroyo, P. R., ordering the cancellation of said acknowledgment and mulcting the defendant with the costs and disbursements.—Guayama,

June 30, 1915.—Respectfully, María Morales.—Manuel A. Martínez, Attorney for the plaintiff.

" 'I, María Morales, being duly sworn, allege: That I am of age and a resident of Guayama; that I am the mother of the plaintiff and that the foregoing complaint as drawn was prepared in accordance with my instructions; that said complaint has been read to me by said attorney and that the facts therein set forth are all true of my own knowledge. — Guayama, June 30, 1915. — María Morales, Deponent.

" 'Subscribed and sworn to before me this thirtieth day of June, 1915, by María Morales, single, of age and resident of Guayama, whom I know personally.—Guayama, date *supra*.—E. S. Mestre, Secretary of the District Court, Guayama, P. R.

" 'Presented and filed in my office this thirtieth day of June, 1915.—Mestre, Clerk.'

"The following is a copy of the answer filed by Simón A. Alcaide, through his attorney, R. Cintrón Lastra:

" '*In the District Court for the Judicial District of Guayama,* P. R.—María Morales in representation of her minor child María de los Dolores, plaintiff, *v*. Simón Antonio Alcaide.—*Re* nullity of an acknowledgment, etc.—Answer to the complaint.—Comes now the defendant, Simón Antonio Alcaide, by his attorney, Rafael Cintrón Lastra, and respectfully alleges to this honorable court that on June 30 of the current year he was notified of the above-entitled complaint; that the facts set forth in said complaint are true, since in point of fact the minor plaintiff María de los Dolores is not defendant's child, he having acknowledged her out of a magnanimous and benevolent feeling engendered by the love the defendant bore the mother of said minor with whom he maintained amorous relations two or three months before the said minor was born until four or five years after. That the defendant has never had any children, not even during his lawful marriage relations. That therefore the defendant admits each and every the allegations contained in the complaint. Wherefore the defendant acquiesces in that the court render judgment in this suit as prayed for in the complaint, always provided he be relieved from the payment of costs and disbursements.—Guayama, P. R., July 2, 1915.—Respectfully, R. Cintrón Lastra, Attorney for the defendant.

" 'Filed in my office this third day of July, 1915.—Mestre, Clerk.

" 'Service acknowledged with copy this third day of July, 1915.—Guayama, P. R., July 3, 1915.—Manuel A. Martínez Dávila, Attorney for the plaintiff.'

"That at the time the foregoing papers, namely, the complaint and the answer above transcribed, were presented and filed in the office of the Clerk of the District Court of Guayama, defendants Simón A. Alcaide, Manuel A. Martínez Dávila, María Morales, Rafael Cintrón Lastra, Alberto E. Vázquez and Arturo G. López, knew that the statements made in the aforesaid documents to the effect that María de los Dolores is not the acknowledged natural child of Simón A. Alcaide, but of another man, were false and untrue since the truth is that the said María de los Dolores is the acknowledged natural daugther of Simón A. Alcaide and not of another man as falsely alleged in these pleadings, all of which was known by all and each of the defendants; and that the said complaint and answer were prepared and filed in the office of the Clerk of the District Court of Guayama in support of and for the purpose of carrying into effect the said unlawful and malicious conspiracy, devised, as aforesaid, with the object and intent of defrauding María de los Dolores as the acknowledged natural child of the said Simón A. Alcaide.

"Wherefore, the district attorney, under oath charges and alleges: That Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Arturo G. López, Rafael Cintrón Lastra and Alberto E. Vázquez, in the city of Guayama, within the Judicial District of Guayama, P. R., and on June 30, 1915, unlawfully, fraudulently and feloniously conspired, connived, combined and agreed to commit a crime against the Laws of Porto Rico, namely: Perversely and by means of false and fraudulent and malicious claims and representations in the manner aforesaid, to defraud a minor by the name of María de los Dolores of her civil rights as the acknowledged natural child and heiress of Simón A. Alcaide; all of which is contrary to the form, efficacy and purpose of the law in such case made and provided and contrary to the peace and dignity of The People of Porto Rico."

The theory of this count and as expressed under oath by the District Attorney, *supra,* is a conspiracy to deprive María de los Dolores of her rights as a natural acknowledged child. While the presentation of a false suit is recited therein, it is only as a means or manner by which the conspiracy was to be attained, namely to defraud a minor named María de los Dolores of her civil rights as a natural acknowledged child and heiress of Simón Alcaide. In two or three other places in the said count the object or purpose

of the conspiracy is so stated. The reading of the count excludes any other theory and it is necessarily the one upon which the defendants went to trial. Incidentally, it may be said that at the time of the argument of the demurrer the district attorney said that the first count was a prosecution by virtue of paragraph 4 of section 62 of the Penal Code. We transcribe sections 62 and 63 of the Penal Code:

"Section 62.—If two or more persons conspire—

"1. To commit any crime;

"2. Falsely and maliciously to present another for any crime, or to procure another to be charged or arrested for any crime;

"3. Falsely to move or maintain any suit, action, or proceeding;

"4. To cheat and defraud any person of any property by any means which are in themselves criminal, or to obtain money or property by false pretences; or

"5. To commit any act injurious to the public health, the public morals, or for the perversion or obstruction of justice or due administration of the laws, they are punishable by imprisonment in jail not exceeding one year or by fine not exceeding one thousand dollars, or both.

"Section 63.—No agreement, except to commit a felony upon the person of another, or to commit arson, or burglary, amounts to conspiracy, unless some act, besides such agreement, be done to effect the object thereof, by one or more of the parties to such agreement."

The only paragraph of section 62 which approaches the description of the delictive act of depriving an acknowledged natural child of her civil rights is the said fourth paragraph. Considered alone and without reference to the authorities in particular we think the said paragraph 4 plainly refers to property or money as such, conceptions that at times are paralleled by civil rights but at others have a much more limited scope. One has rights to property or money, but one has many other rights. Civil rights may directly lead to property or money. The deprivation of civil rights sometimes necessarily leads to the deprivation of property but if the deprivation of civil rights necessarily leads to the

deprivation of property or money, the property or money should be described in the count.

The particular property of which the acknowledged natural child was to be deprived should have been expressed in the information. Long ago, in *United States* v. *Cruikshank*, 92 U. S. 542, which is one of our leading cases in criminal jurisprudence, the court said:

"The crime is made to consist in the unlawful combination with an intent to prevent the enjoyment of any right granted or secured by the Constitution, etc. All rights are not so granted or secured. Whether one is so or not is a question to be decided by the court, not the prosecutor. Therefore the indictment should state the particulars to inform the court as well as the accused."

See *McKenna* v. *United States*, 127 Fed. 91, and other citations of this leading case.

This principle, we think, is applicable here, but if it be supposed that to deprive an acknowledged natural child of her status is to deprive her of property rights, let us consider what these property rights could or might be. Section 195 of the Civil Code, as amended by the Act of March 9, 1911, provides:

"Section 195.—A natural child has the right:
"1. To use the surname of the parent making the recognition.
"2. To be supported.
"3. To receive the hereditary portion determined in this code."

The right to bear the surname of the parent is clearly not property. The inheritance "determined in this code" cannot be considered as property, because nobody is heir to the living; and expectancies of this sort are not considered to be property.

As to the right to support, this is more specifically defined in Title VIII of the Civil Code. Section 217 provides as follows:

"The obligation to support may be claimed from the time the

person having a right thereto shall require such support; but it shall not begin until the date on which a petition therefor is made.''

The obligation of Alcaide in this case was not shown to be an existing one.

Section 219 says, among other things:

''The right to receive support cannot be relinquished or transmitted to a third party.''

Section 220 provides that the obligation to give support shall also cease when the recipient is capable of working at a trade, profession or industry, or has obtained employment or bettered his fortune, so that he does not stand in need of the amount given for support.

The civil rights of an acknowledged natural child very dubiously refer to the right of support when such right is so qualified and in any event that right is not ''property'' within the meaning of paragraph 4 of section 62 of the Penal Code.

Section 559 of the Penal Code says:

\*          \*          \*          \*          \*          \*          \*

''8. The word 'property' includes both real and personal property.

\*          \*          \*          \*          \*          \*          \*

''10. The words 'personal property' include money, goods, chattels, things in action and evidence of debt.''

These definitions seem clearly to exclude the right to support from the meaning of the word ''property'' as defined in section 62 of the Penal Code, inasmuch as all the personal property here expressed is capable of being transmitted, a condition denied to the right of support.

*Gleason* v. *Thaw,* 236 U. S. 558, was a case where an attorney presented in a bankruptcy suit a claim for professional services alleging that the services rendered were property within the meaning of paragraph 2, section 17, of the Bankruptcy Act, excepting liabilities for obtaining property

by false pretenses from the general release of a discharge in bankruptcy. The court says:

"The accurate delimitation of the concept property would afford a theme especially apposite for amplificative philosophic disquisition; but the Bankrupt Law is a prosy thing intended for ready application to the every-day affairs of practical business, and when construing its terms we are constrained by their usual acceptation in that field of endeavor."

And on page 561, the court says:

"Congress, we think, never intended that property in the paragraph under consideration should include professional services. At most it denotes something subject to ownership, transfer or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business and the same significance attached to it in many carefully prepared writings. The constitutions of many States provide that all property shall be taxed, but it has never been supposed that this applies to professional services."

The court cites with approval the opinion of the judge of the lower court—Judge Gray—in *Gleason* v. *Thaw,* 185 Fed. Rep. 347. In that case the court says:

"That the word 'property' is *nomen generalissimum*, as asserted by the petitioner, is not to be denied, but no more is it to be denied that its meaning may be restricted, not only by the application of the maxim, *noscitur a sociis*, but by the purpose for which it is used or by its evident use as a word of art, or by its use in a technical sense. The very generality of the word requires restriction, according to the circumstances in which it is used. In some judgments, as well as in some *obiter dicta,* the word 'property' has been made to cover, by a sort of rhetorical flourish, everything tangible or intangible of which value may be predicated. There are, however, well considered decisions of the highest authority, in which, from the view point of the particular case, personal rights and liberties are to be included within the meaning of the word 'property.' Thus, a man's right to labor, to carry on a lawful business, or to practice a lawful profession, may not be taken away from him or be restricted by any act of the

state not within its police powers, such act being considered as a deprivation of property within the constitutional inhibition, federal or state. So a combination or conspiracy to destroy or prevent the carrying on of the business of any person within the protection of the law, may be enjoined as a threatened trespass upon a property right. Such cases, however, are far from saying that services actually rendered under a supposed contract are themselves property, which have been taken fraudulently from the possession of the one who has rendered the service, within the meaning of that word as used in the section of the Bankruptcy Act now under consideration. It is one thing to say that a man's right to engage or sell his services according to his own volition may, for the purposes of its protection, be considered a species of property, and quite another to assert that services already rendered by one person to another are to be considered. as property, in order to enlarge or change the ordinary remedies by which the debt due from the person to whom such services were rendered may be recovered. The right to labor in any calling or profession in the future may be considered a property right, for the purpose of protection, but no right exists as to labor or services already rendered, and there is nothing to protect, except the right of recovering due compensation therefor. In the latter case, nothing has been transferred from the possession of the one who has rendered the services to the other, for whom the services were rendered. We must not allow ourselves, by a subtle verbal casuistry, to confuse a concept of the right to work or render service with the service itself when it has been rendered. The right to render labor or service is one thing: the service itself is quite a different thing.''

And at the end of the case the court says:

''Certainly under no proper and strict administration of the criminal law could any one be indicted under the general language of obtaining property under false pretenses, on the ground that services whose performance has been induced by a false pretense, are property, within the meaning of the act.''

A somewhat similar discussion of property is to be found in *Ruth* v. *Board of Affairs*, L. R. A. 1915 C, 982, 48 S. E. 105, where the court, after a general discussion, quotes from another case to say:

''Property, then, in a determinate object is composed of certain

constitutional elements, to wit, the unrestricted right of use, enjoyment and disposal of that object.''

See also *Harvey Coal Company* v. *Dillon*, 6 L. R. A. (N. S.) 631.

In *Green* v. *Edwards*, R. I., 77 Atl. 188, it was held that a mere expectancy or possibility while the ancestor was still living was not property within the meaning of the Federal Constitution that no one should be deprived of property without due process of law.

. *Billingsly* v. *St. Louis, Etc.*, 107 S. W. 173, was a case where it was held that the domestic services of the wife and her marriageable companionship are purely personal to the husband and possess none of the attributes of property.

See also our decision in *Fajardo Sugar Company* v. *Treasurer of Porto Rico*, 22 P. R. R. 290, where, citing *Gleason* v. *Thaw, supra,* we held that credits were not necessarily property under a provision requiring all property to be taxed.

. The *fiscal* cites several cases to show that a future interest may be considered. All these cases were to the effect that the wife had such an interest in an inchoate right of dower that she could maintain an action to set aside a fraudulent conveyance made by her husband to defeat such inchoate right. In one of them, namely, *Hatch* v. *Rollins*, 59 S. W. 232, the action of the wife was for her vested dower right in lands which the husband had conveyed immediately before his marriage. A dower right may be considered as property and is perhaps capable of being assigned. Certainly no one in the United States would buy property unless the wife joined in the deed. But whether an inchoate right of dower be considered as property or not, we feel bound to hold that a right to support is not property within the meaning of the Penal Code.

The second count is as follows:

''That on or about June 30, 1915, and in the city of Guayama, which forms part of and is comprised within the Judicial District of

the District Court of Guayama, P. R., defendants Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Arturo G. López, Rafael Cintrón Lastra and Alberto E. Vázquez, unlawfully and wilfully and with criminal intent, conspired, united and connived to commit an act tending to pervert and obstruct public justice and due administration of law in the said District Court of Guayama in the following manner: On the date stated, that is, on or about the thirtieth day of June, 1915, defendants Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Alberto E. Vázquez and Arturo G. López and Rafael Cintrón Lastra, unlawfully, maliciously and wilfully conspired, united and connived for the purpose of using corrupt and unlawful methods to persuade the District Court for the Judicial District of Guayama to decree the nullity of the acknowledgment made by Simón A. Alcaide on October 3, 1900, before the official in charge of the Civil Registry of Arroyo, P. R., to the effect that María de los Dolores was his natural child; and with the object of furthering, continuing and carrying out the conspiracy, María Morales subscribed to the complaint transcribed hereunder by connivance and agreement with Manuel A. Martínez Dávila, her attorney, who also subscribed the said complaint, with Simón A. Alcaide, Rafael Cintrón Lastra, Alberto E. Vázquez and Arturo G. López, who combined, united and placed themselves of common accord to obstruct and pervert public justice and the due administration of law in the District Court of Guayama.

   " 'In the District Court of Guayama, P. R.—María Morales, in representation of her minor child María de los Dolores, Plaintiff, *v.* Simón Antonio Alcaide, Defendant.—Civil Case No.—.—*Re* contest of acknowledgment of a natural child.—Complaint.—Comes now the plaintiff by her attorney and under oath alleges:—1. That she is the mother, with *patria potestas,* of her minor child María de los Dolores Morales and a resident of Guayama and that the defendant is of age and also a resident of Guayama.—2. That as a consequence of the intimate relations that existed between the mother of the minor plaintiff María Morales, who is single, and a man, also single but whose name need not be here mentioned, with whom she cohabited for some time, the minor plaintiff was conceived and born on December, 23, 1897, and registered by the mother of said minor as her natural child in the Civil Registry of Arroyo, P. R., on March 21, 1898.—3. That seven months after the conception of the minor plaintiff and during the pregnancy of the mother of said minor, the mother of the plaintiff became acquainted with the defendant and maintained amorous re-

lations with him.—4. That on October 3, 1900, defendant Simón Antonio Alcaide magnanimously appeared before the clerk of the City Council of Arroyo and by a marginal note set opposite to the record of birth acknowledged the child María de los Dolores Morales as his daughter without the consent of the mother of the minor plaintiff and knowing that the latter was not his child, as in fact she is not, he acknowledging her out of a feeling of charity and affection to said child, who was born while the defendant was living with her mother.—5. The plaintiff has good reasons for asserting positively that another and not the defendant is the father of the said minor and it was merely out of love for the mother and the child that the defendant acknowledged the latter.    Wherefore and in view of the foregoing the plaintiff prays the court to render judgment in due course decreeing that the defendant Simón Antonio Alcaide is not the father of the minor plaintiff and that consequently the acknowledgment by said defendant of said minor plaintiff in the Civil Registry of Arroyo, P. R., is null and void, ordering the cancellation of said acknowledgment and mulcting the defendant in costs and disbursements.—Guayama, June 30, 1915.—Respectfully, María Morales.—Manuel A. Martínez, Attorney for the plaintiff.

"Affidavit.—I María Morales, being duly sworn, allege: That I am of age and a resident of Guayama; that I am the mother of the plaintiff and that the foregoing complaint as drawn was prepared in accordance with my instructions; that said complaint has been read to me by said attorney and that the facts therein set forth are all true of my own knowledge.—Guayama, June 30, 1915.—María Morales, Deponent.

" 'Subscribed and sworn to before me this thirtieth day of June, 1915, by María Morales, single, of age and resident of Guayama, whom I know personally.—Guayama, date *supra*.—E. S. Mestre, Secretary of the District Court, Guayama, P. R.

" 'Presented and filed in my office this thirtieth day of June, 1915.—Mestre, Clerk.'

"That on the second day of July, 1915, Simón A. Alcaide, represented by his attorney R. Cintrón Lastra, and in unison and concurrence with the latter and with María Morales, Arturo G. López, Alberto E. Vázquez, Manuel A. Martínez Dávila, presented and filed in the office of the District Court of Guayama an answer acquiescing in the demands of the complaint and asking for judgment as prayed for.    Said answer reads as follows:

" '*In the District Court for the Judicial District of Guayama,*

*P. R.*—María Morales in representation of her minor child María de los Dolores, Plaintiffs, *v.* Simón Antonio Alcaide.—*Re* nullity of an acknowledgment, etc.—Answer to the complaint.—Comes now the defendant, Simón Antonio Alcaide, by his attorney Rafael Cintrón Lastra, and respectfully alleges to this Honorable Court: that on June 30 of the current year he was notified of the above-entitled complaint; that the facts set forth in said complaint are true inasmuch as the minor plaintiff María de los Dolores is not really the defendant's child, he having acknowledged her out of a kind and benevolent feeling engendered by the love the defendant bore the mother of said minor with whom he maintained amorous relations two or three months before the said minor was born until four or five years after. That the defendant has never had any children, not even during his lawful marriage relations. That therefore the defendant admits each and every the allegations contained.in the complaint. Wherefore the defendant acquiesces in that the court render judgment in this suit as prayed for in the complaint, always provided he be relieved from the payment of costs and disbursements.—Guayama, P. R., July 2, 1915.—Respectfully, R. Cintrón Lastra, Attorney for the Defendant.

'Filed in my office this third day of July, 1915.—Mestre, Clerk.

'Service acknowledged with copy this third day of July, 1915.— Guayama, P. R., July 3, 1915.—Manuel A. Martínez Dávila, Attorney for the plaintiff.'

"That at the time said complaint was made and presented and filed in the office of the Clerk of the District Court of Guayama as well as at the time the pleading in which Simón A. Alcaide asked for judgment as prayed for in the complaint was presented, defendants Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Alberto E. Vázquez and Arturo G. López, knew and were aware that the allegations set forth in said pleadings to the effect that María de los Dolores is not the natural daughter of Simón A. Alcaide, but of another man, were false, untrue and contrary to the facts; and that the said defendants made such false allegations and presented such documents embodying the aforesaid allegations to the court with the end and purpose of procuring by fraudulent and unlawful means the exemption and freedom from responsibility and obligation of Simón A. Alcaide as to María de los Dolores, as his acknowledged natural daughter, and also, by fraud and deceit, in connivance with the other defendants, to obtain, by admitting the allegations of the complaint, the issuance of a judgment by the District Court of Guayama granting the prayer of the complaint, that is, to decree that Simón A.

Alcaide was not the father of María de los Dolores and to order the cancellation of nullity of the act of acknowledgment of the minor María de los Dolores as made by Simón A. Alcaide on October 3, 1900, in the Civil Registry of Arroyo.—That the said defendants Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Rafael Cintrón Lastra, Alberto E. Vázquez and Arturo G. López unlawfully and fraudulently conspired, combined and united to deceive the District Court of Guayama as aforesaid for the purpose of perverting and obstructing the ends of public justice and the due administration of law in said court, obtaining by such unlawful, corrupt and fraudulent means, a judgment which would deprive María de los Dolores of her rights as the acknowledged natural child of Simón A. Alcaide.— Wherefore, the district attorney, under oath charges and alleges: That Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Arturo G. López, Rafael Cintrón Lastra and Alberto E. Vázquez, in the city of Guayama, capital of the Judicial District of Guayama, P. R., and on the date mentioned, unlawfully, fraudulently, and feloniously conspired, connived, combined and agreed to commit a crime against the Laws of Porto Rico, namely: Perversely and by means of false and fraudulent and malicious claims and representations in the manner and form aforesaid, to pervert and obstruct the ends of public justice and the proper administration of justice in the said District Court of Guayama, Judicial District of the same name, all of which is contrary to the form, efficacy and purpose of the law in such case made and provided and contrary to the peace and dignity of The People of Porto Rico.''

This count must be governed by the principles set forth in *People* v. *Torregrosa, supra,* inasmuch as the acts charged are not of a nature to pervert public justice except, as said in that case, in the general sense in which any illegal act would pervert public justice.

*People* v. *Daniels,* 105 Cal. 262, cited by the *fiscal,* was a case where the prosecution was clearly under paragraph 3 of section 62, namely, to maintain a false suit, whereas the *fiscal* concedes, as we think he must, that this is a prosecution by virtue of paragraph 2 of said section 62, *supra.*

The third count is as follows:

''That on or about June 30, 1915, and in the city of Guayama,

which forms part of the jurisdiction of the District Court of Guayama, P. R., defendants Simón A. Alcaide, Rafael Cintrón Lastra, Manuel A. Martínez, María Morales, Arturo G. López and Alberto E. Vázquez, unlawfully, perversely, fraudulently and with criminal intent, conspired, united, connived and agreed, to the end of defrauding María de los Dolores Alcaide y Morales and for the purpose of benefiting themselves, in the following manner: The said Simón A. Alcaide, with the object of obtaining and securing relief at all times from his obligation toward María de los Dolores Alcaide y Morales, acknowledged to be his natural daughter, and immunity in any suits she might institute against him in support of the rights and property pertaining to her by reason of such acknowledgment; the said María Morales, for and in consideration of the sum of eight thousand dollars to be handed her by Simón A. Alcaide, and the said Rafael Cintrón Lastra, Manuel A. Martínez Dávila, Alberto E. Vázquez and Arturo G. López, for and in consideration of a certain sum of money, the exact amount of which is unknown to the district attorney; unlawfully, corruptly, fraudulently and feloniously, prepared and caused to be prepared and signed a pleading at the place and on the date mentioned, for the purpose of carrying into effect the said unlawful and malicious conspiracy to the ends and purposes mentioned, which pleading was presented and filed in the office of the Clerk of the District Court of Guayama, P. R., and reads as follows:

" '*In the District Court of Guayama, P. R.*—María Morales, in representation of her minor child María de los Dolores, Plaintiff, *v.* Simón Antonio Alcaide, Defendant.—Civil Case No.——.—*Re* contest of acknowledgment of a natural child.—Complaint.—Comes now the plaintiff by her attorney and under oath alleges:—1. That she is the mother with *patria potestas* of her minor child María de los Dolores Morales and a resident of Guayama and that the defendant is of age and also a resident of Guayama.—2. That as a consequence of the intimate relations that existed between the mother of the minor plaintiff María Morales, who is single, and a man, also single but whose name need not be here mentioned, with whom she cohabited for some time, the minor plaintiff was conceived and born on December 23, 1897, and registered by the mother of said minor as her natural child in the Civil Registry of Arroyo, P. R., on March 21, 1898.—3. That seven months after the conception of the minor plaintiff and during the pregnancy of the mother of said minor, the mother of the plaintiff became acquainted with the defendant and maintained amorous relations with him.—4. That on October 3, 1900, defendant Simón

Antonio Alcaide magnanimously appeared before the clerk of the municipality of Arroyo and, by a marginal note set opposite to the record of birth, acknowledged the child María de los Dolores Morales as his daughter without the consent of the mother of the minor plaintiff and knowing that the latter was not his child, as in fact she is not, he acknowledging her out of a feeling of charity and affection for said child, who was born while the defendant was living with her mother. Said acknowledgment was not approved by the court.—5. The plaintiff has good reasons for asserting positively that another and not. the defendant is the father of the said minor and it was merely out of love for the mother and the child that the defendant acknowledged the latter.—Wherefore and in view of the foregoing the plaintiff prays the court to render judgment in due course decreeing that the defendant Simón Antonio Alcaide is not the father of the minor plaintiff and that consequently the acknowledgment by said defendant of said minor plaintiff in the Civil Registry of Arroyo, P. R., is null and void, ordering the cancellation of said acknowledgment and mulcting the defendant in costs and disbursements.—Guayama, June 30, 1915.—Respectfully, María Morales.—Manuel A. Martínez, Attorney for the plaintiff.

" 'Affidavit.—I, María Morales, being duly sworn, allege: That I am of age and a resident of Guayama; that I am the mother of the plaintiff and that the foregoing complaint as drawn was prepared in accordance with my instructions; that said complaint has been read to me by said attorney and that the facts therein set forth are all true of my own knowledge.—Guayama, June 30, 1915.—María Morales, Deponent.

" 'Subscribed and sworn to before me this thirtieth day of June, 1915, by María Morales, single, of age, and resident of Guayama, whom I know personally.—Guayama, date supra.—E. S. Mestre, Clerk of the District Court, Guayama, P. R.

" 'Presented and filed in my office this thirtieth day of June, 1915.—Mestre, clerk.'

"That on the second day of July, 1915, Simón A. Alcaide, represented by his attorney R. Cintrón Lastra, and in unison and concurrence with the latter and with María Morales, Arturo G. López, Alberto E. Vázquez, Manuel A. Martínez Dávila, presented and filed in the office of the District Court of Guayama an answer acquiescing in the demands of the complaint and asking for judgment as prayed for. Said answer reads as follows:

" 'In the District Court for the Judicial District of Guayama,

*P. R.*—María Morales, in representation of her minor child María de los Dolores, Plaintiff, *v.* Simón Antonio Alcaide.—*Re* nullity of an acknowledgment, etc.—Answer to the Complaint.—Comes now the defendant, Simón Antonio Alcaide, by his attorney Rafael Cintrón Lastra, and respectfully alleges to this honorable court: that on June 30 of the current year he was notified of the above-entitled complaint; that the facts set forth in said complaint are true inasmuch as the minor plaintiff María de los Dolores is not really the defendant's child, he having acknowledged her out of a kind and benevolent feeling engendered by the love the defendant bore the mother of said minor with whom he maintained amorous relations two or three months before the said minor was born until four or five years after.—That the defendant has never had any children, not even during his lawful marriage relations. That therefore the defendant admits each and every the allegations contained in the complaint. Wherefore the defendant acquiesces in that the court render judgment in this suit as prayed for in the complaint, always provided he be relieved from the payment of costs and disbursements.—Guayama, P. R., July 2, 1915.— Respectfully, R. Cintrón Lastra, Attorney for the defendant.

" 'Filed in my office this third day of July, 1915.—Guayama, P. R., July 3, 1915.—Mestre, clerk.

" 'Service acknowledged with copy this third day of July, 1915.— Guayama, P. R., July 3, 1915.—Manuel A. Martínez Dávila, Attorney for the plaintiff.'

"That at the time the said pleadings were prepared and at the time they were presented and filed in the office of the Clerk of the District Court of Guayama, the said Simón A. Alcaide, María Morales, M. A. Martínez Dávila, Rafael Cintrón Lastra, Alberto E. Vázquez and Arturo G. López, knew that María de los Dolores Alcaide y Morales had been acknowledged by Simón A. Alcaide on October 3, 1900, to be his natural child and they also knew that the allegations contained in the complaint had not been made by María Morales freely and of her own volition but in return for a payment of eight thousand dollars to be made her, without which payment she, the said María Morales would never have subscribed and sworn to the said complaint; that the said defendants further knew that it was untrue and contrary to fact that the minor María de los Dolores was conceived by her mother María Morales seven months before the inception of her amorous relations with Simón A. Alcaide, as alleged in the complaint, but that, on the contrary, said María de los Dolores was conceived during the period that María Morales maintained

amorous relations with said Simón A. Alcaide; that the said defendant likewise knew that the statement in the complaint to the effect that María de los Dolores was acknowledged by Simón A. Alcaide as his natural child, he knowing that she was not his natural child and that he acknowledged her out of pure sympathy and love, was false and untrue, the facts being that Simón A. Alcaide acknowledged the said minor María de los Dolores as his natural child under the conviction and in the belief that she was really and truly his natural daughter; that the said defendants also knew at the time the said pleadings were prepared, signed and filed, that the allegation made in the answer to the complaint to the effect that Simón A. Alcaide maintained amorous relations from two or three months prior to the birth of María de los Dolores to four or five years after, was untrue and contrary to fact, since the truth is that the relations between Simón A. Alcaide and María Morales began three or four years prior to the birth of the said María de los Dolores, and that the said pleadings embodying false statements were made, subscribed and presented to the District Court of Guayama with the object of carrying into effect said unlawful and malicious plot and conspiracy as hereinbefore stated and for the purpose and with the intention of exempting the said Simón A. Alcaide for all times from his obligation towards María de los Dolores Alcaide y Morales, whom he had acknowledged as his natural daughter, thus defrauding her of the rights pertaining to her by reason of such acknowledgment; and to this end and purpose of obtaining the sum of eight thousand dollars, to be paid to the defendant María Morales, and a sum of money the exact amount of which is unknown to the district attorney, to be paid to the other defendants Rafael Cintrón Lastra, Manuel A. Martínez Dávila, Alberto E. Vázquez and Arturo G. López.—Wherefore, the district attorney, under oath charges and says: That Simón A. Alcaide, María Morales, Alberto E. Vázquez, Manuel A. Martínez Dávila, Rafael Cintrón Lastra and Arturo G. López, on or about June 30, 1915, and in the Judicial District of Guayama, P. R., unlawfully, fraudulenty, maliciously and feloniously conspired, combined, united and agreed to obtain for and to insure to the said Simón A. Alcaide exemption for all times from his obligations as father of the minor María de los Dolores Alcaide, acknowledged by him to be his natural daughter, thus defrauding said María de los Dolores of the rights to which she was entitled by reason of such acknowledgment, and to obtain the sum of eight thousand dollars to be paid to the defendant María Morales and a sum of money the amount of which is unknown:

to the district attorney to be paid to the defendants Manuel A. Martínez Dávila, Rafael Cintrón Lastra, Alberto E. Vázquez and Arturo G. López, all of which is contrary to the Law in such case made and provided and against the peace and dignity of The People of Porto Rico.

"Office of the District Attorney.—The foregoing information is based on the examination by me of witnesses under oath and I solemnly believe that there is just ground for bringing the same before the court.—(Sd.) S. Vivaldi Pacheco, District Attorney.

"Subscribed and sworn to before me this twenty-ninth day of June, 1916, in Guayama, P. R.—(Sd.) E. S. Mestre, Clerk of the District Court of Guayama, P. R.

"Presented in open court and filed in the office of the clerk this 29th day of June, 1916.—(Sd.) E. S. Mestre, Clerk of the District Court."

This is concededly also a count by virtue of paragraph 4 of section 62 of the Penal Code and is, like the first count, dependent on the matter of depriving the acknowledged natural child of property, and hence the said third count is subject to the same objection.

Inasmuch as no count in the information falls clearly within any of the subdivisions of section 62 of the Penal Code, the judgment must be reversed and the prisoners discharged.

*Reversed.*

Chief Justice Hernández and Justices Del Toro and Aldrey concurred.

Mr. Justice Hutchison concurred in the judgment.