## GLEASON *v.* THAW.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 143. Submitted January 19, 1915.—Decided February 23, 1915.

Professional services of an attorney and counselor-at-law are not property within the meaning of par. 2, § 17 of the Bankruptcy Act of 1898, as amended in 1903, excepting liabilities for obtaining property by false pretenses from the general release of the discharge in bankruptcy.

In view of the well known purpose of the Bankruptcy Act, exceptions to the operation of a discharge thereunder should be confined to those plainly expressed.

196 Fed. Rep. 359, affirmed.

THE facts, which involve the construction of the Bankruptcy Act and the effect of a discharge in bankruptcy, are stated in the opinion.

*Mr. John B. Gleason, pro se.*

*Mr. William A. Stone* for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

The question for determination is whether the professional services of an attorney and counselor at law are property within the meaning of paragraph 2, § 17, of the Bankruptcy Act (30 Stat. 544, 550), as amended in 1903 (32 Stat. 797, 798), which excepts from the general release of a discharge "liabilities for obtaining property by false pretenses or false representations." The essential facts, in the words of the Circuit Court of Appeals, are these (196 Fed. Rep., p. 360):

"On June 28, 1906, the defendant, Harry K. Thaw, was indicted for murder committed in the City of New York. Briefly stated, the complaint alleges that in order to secure the services of the plaintiff as chief counsel, the defendant represented that he was the owner of an interest of at least $500,000 in the estate of his father and had an annual income of $30,000 in his own right. That relying upon these and other representations, the plaintiff consented to act as counsel for the defendant and performed services for him in that capacity which were worth the sum of $60,000 over and above all payments. The complaint charges that all of these representations were false and made with fraudulent intent. The defendant, among other defenses, pleaded in a supplementary answer, his discharge in bankruptcy by the District Court of Pennsylvania, dated December 29, 1910. To this the plaintiff demurs, insisting that the discharge is insufficient in law, the plaintiff's cause of action being liabilities for obtaining property by false representations."

The trial court, following *Gleason* v. *Thaw* (185 Fed. Rep. 345), overruled the demurrer and dismissed the complaint; the appellate court, upon the same authority, affirmed the judgment (196 Fed. Rep. 359).

*Gleason* v. *Thaw, supra,* came before the Circuit Court of Appeals for the Third Circuit upon a petition to review the final order of the District Court staying an action brought by Gleason on the same indebtedness here involved, and presented the identical question of law now before us. The court answered it in the negative, and among other things in an opinion by Judge Gray said (185 Fed. Rep., p. 347):

"The very ingenious and forceful argument presented to this court by the petitioner for review, is founded mainly upon the proposition that: 'The right to command services of the value of $80,000.00 is property; the services also are property; the test is value—not degree of intangi-

bility.' . . . That the word 'property' is *nomen generalissimum*, as asserted by the petitioner, is not to be denied, but no more is it to be denied that its meaning may be restricted, not only by the application of the maxim, *noscitur a sociis*, but by the purpose for which it is used, or by its evident use as a word of art, or by its use in a technical sense. The very generality of the word requires restriction. . . . There are, however, well considered decisions of the highest authority, in which, from the view point of the particular case, personal rights and liberties are to be included within the meaning of the word 'property'. . . . Such cases, however, are far from saying that services actually rendered under a supposed contract are themselves property, which have been taken fraudulently from the possession of the one who has rendered the service, within the meaning of that word as used in the section of the bankruptcy act now under consideration."

The accurate delimitation of the concept property would afford a theme especially apposite for amplificative philosophic disquisition; but the Bankrupt Law is a prosy thing intended for ready application to the everyday affairs of practical business, and when construing its terms we are constrained by their usual acceptation in that field of endeavor. The word property, without restriction, occurs more than seventy times in the Act. Not once does it plainly refer to professional services, and, except in very few instances, to include them within its intendment would produce a patent absurdity. Reference to the following provisions will suffice to indicate the sense of the word therein. Section 1 (15) declares one shall be deemed insolvent "whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed . . . shall not, at a fair valuation, be sufficient in amount to pay his debts." Section 3-*a* provides that "acts of bankruptcy by a per-

son shall consist of his having (1) conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property with intent to hinder . . . or (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer," etc. Section 50 provides, in respect of trustees' bonds, " (*d*) the court shall require evidence as to the actual value of the property of sureties; . . . (*f*) the actual value of the property of the sureties, over and above their liabilities and exemptions, on each bond shall equal at least the amount of such bond." And § 60-*d* brings the two things into sharp contrast—"If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be reëxamined by the court on petition of the trustee," etc.

Congress, we think, never intended that property in the paragraph under consideration should include professional services. At most it denotes something subject to ownership, transfer or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business and the same significance attaches to it in many carefully prepared writings. The constitutions of many States provide that *all property* shall be taxed, but it has never been supposed that this applies to professional services.

We do not overlook, nor do we intend to qualify, what this court has said in other cases. Our sole present concern is with the interpretation of a particular statute; the scope and purpose of constitutional limitations are in no way involved—they depend upon considerations of a wholly different character.

In view of the well-known purposes of the Bankrupt Law exceptions to the operation of a discharge thereunder should be confined to those plainly expressed; and while much might be said in favor of extending these to liabilities incurred for services obtained by fraud the language of the act does not go so far.

The court below reached a proper conclusion and its judgment is

*Affirmed.*