# BARNES *v.* FROST.

(Division A.   March 16, 1931.)

[133 So. 119.   No. 28956.]

**Creekmore & Creekmore,** of Jackson, for appellant.

John Horan, of Water Valley, for appellee.

**Cook, J.**, delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Yalobusha county, Miss., against the appellant, W. J. Barnes, for the sum of two hundred twenty dollars and ninety-eight cents and costs.

The facts shown by the record are that on January 5, 1928, the appellee signed, as surety for the appellant, a series of notes payable to the People's Bank of Water Valley, Miss., and, the appellant having failed to pay the notes when due, the appellee, surety, paid them, and the three notes of the series for sixty-three dollars and fifty cents each, which are involved in this suit, were transferred to him. Thereafter the appellee brought suit in the justice court against the appellant on these three notes, and recovered a judgment, from which there was an appeal to the circuit court. In the circuit court the only defense offered by the appellant was that he had been adjudged a bankrupt on the 8th day of November, 1928, and had been discharged in bankruptcy by an order entered in the District Court of the United States for the Western Division of Tennessee on the 4th day of September, 1929.

The evidence offered by the appellee in the circuit court consisted of the notes sued on and his own testimony to the effect that he signed the notes as surety at the request of the appellant, and on his representation that he was employed by the Standard Oil Company and had sufficient income to pay the notes when they became due, and that there were no prior obligations against his income; that, when the notes were due, the appellant failed to pay them, and, when pressed by him, stated that he had to pay out of his salary a previous obligation to the Mechanics' Bank of Water Valley. The appellant offered in evidence a duly certified and authenticated copy of the judgment of the United States District Court adjudging him a bankrupt, and also offered in evidence

his original discharge in bankruptcy dated September · 4, 1929. Upon this evidence the circuit court peremptorily instructed the jury to return a verdict for the appellee, and from the judgment entered upon the verdict returned by the jury this appeal was prosecuted.

Section 14 b (3) of the Bankruptcy Act of 1898, as amended by the Act of February 5, 1903, sec. 4, and Act June 25, 1910, sec. 6, 11 U. S. C. A., sec. 32 (b) (3), provides that an application for a discharge in bankruptcy should be denied if the applicant has ''obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person,'' but this section is not here involved. In the case at bar, we are called upon to determine the effect of a discharge in bankruptcy already granted upon the liability sued on, and the section of the Bankruptcy Act upon which the appellee relies to avoid the discharge as a release of the debt sued on is section 17a(2), 11 U. S. C. A., sec. 35(2), which provides that ''a discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . (2) are liabilities for obtaining property by false pretenses or false representations. . . .'' In the case of Gleason v. Thaw, 236 U. S. 558, 35 S. Ct. 287, 288, 59 L. Ed. 717, the court had under consideration the question of whether the professional services of an attorney at law were ''property'' within the meaning of this paragraph of the act, and in discussing the meaning of the word as therein used said: ''The bankrupt law is a prosy thing, intended for ready application to the everyday affairs of practical business, and when construing its terms we are constrained by their usual acceptation in that field of endeavor. The word 'property,' without restriction, occurs more than seventy times in the act. . . . At most it denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may

be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business, and the same significance attaches to it in many carefully prepared writings. . . . In view of the well-known purposes of the bankrupt law, exceptions to the operation of a discharge thereunder should be confined to those plainly expressed; and while much might be said in favor of extending these to liabilities incurred for services obtained by fraud, the language of the act does not go so far.''

What the appellant herein secured from the appellee by false or fraudulent representations, if any were made, was the mere indorsement of a promissory note. It does not appear that he made any false representations to the People's Bank from which he obtained property or money on the credit of the appellee, and the liability of the appellant to the appellee is not one for obtaining property from him directly by false or fraudulent representations, but is one for obtaining, by means of such representations, his signature as indorser on a note which he eventually was compelled to pay. Applying the delimitation of the word as outlined in Gleason v. Thaw, supra, we do not think a mere indorsement of a note as surety is ''property'' within the meaning of this paragraph of the said act, and that consequently the discharge in bankruptcy operated to release him from liability to the appellee.

It follows from these views that the peremptory instruction requested by the appellant should have been granted, and consequently the judgment of the court below will be reversed, and judgment will be entered here for the appellant.

Reversed, and judgment for appellant.