ELY, Circuit Judge
(concurring in part and dissenting in part):
I concur only in that portion of my Brother’s Opinion which holds that the two lower courts erred in determining that Section 17(a)(4) of the Bankruptcy Act[1] was inapplicable under the facts as alleged by the judgment creditor, Lawrence T. Lasagna, *397 Inc. (“Lasagna”). From the conclusion that Section 17(a)(8)[2] is applicable, however, I respectfully dissent.
In its original action in state court, Lasagna sought to recover from Progressive Farming, Inc. (“Progressive”) and the three bankrupt appellees for tomato harvesting services rendered to Progressive by Lasagna. The state court awarded Lasagna as an yet unsatisfied judgment of $24,365.17, with interest and costs, against the three appel-lees, the sole shareholders of Progressive at the time the corporation became indebted to Lasagna. The appellees were held liable under the alter ego theory for the corporate debt of Progressive and on the basis of having made fraudulent conveyances to themselves which rendered Progressive unable to pay its debt to Lasagna. An examination of the pleadings in the Bankruptcy Court and of the state court judgment makes clear that it was this looting by fraudulent conveyance which gave rise to the liability of the appellees to Lasagna. It is for this reason that I believe that the majority is right in holding that Lasagna alleged adequate facts to support a claim under Section 17(a)(4), the debt assertedly having been “. . . created by . fraud, embezzlement, misappropriation or defalcation while acting as . offi-eer[s] or in any fiduciary capacity.....” 11 U.S.C. § 35(a)(4).
I disagree, however, with my Brothers in the resolution of the issue concerning the applicability of Section 17(a)(8).
The basis for that disagreement is Lasagna’s failure to identify any “property,” within the meaning of the Section, that could have been willfully and maliciously injured by the appellees. The majority seems to assume that the injured “property” was the unsecured debt owing to Lasagna for the tomato harvesting, the debt never paid because of Progressive’s insolvency. Because that insolvency was assertedly caused by appellees’ defalcations, the majority concludes that Section 17(a)(8) would, if the facts are as alleged by Lasagna, bar discharge of the state court judgment.
The District Court upheld .the Bankruptcy Court’s determination that Section 17(a)(8) was inapplicable because “[n]o injury has been done to any ‘earmarked’ property of the plaintiff-appellant [Lasagna] ..” C.R. 72. With this conclusion, I thoroughly agree.
As I see it, the congressional intent is plainly apparent on the face of the statute. That intent was that the character of the interest alleged to have been injured should in fact determine dischargeability. It is only injuries to “property” that are not dischargeable. I recognize that the term “property” is so broad that it is not always capable of fixed interpretation.[3] But, because the operation of a discharge under the Bankruptcy Act “should be confined to those plainly expressed . . .” (Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915)), I cannot join my Brothers in expanding the reach of Section 17(a)(8) beyond what I perceive to be its permissible limits. No decisions of our court, or any other,[4] support the result *398 reached by the majority, especially not Tinker v. Colwell, 193 U.S. 473,24 S.Ct. 505, 48 L.Ed.2d 754 (1904), a decision upon which the majority relies for the proposition that Section 17(a)(8) includes within its purview the debt owed by appellees to Lasagna.
In Tinker, the Supreme Court recognized that, in 1904, the law protected a husband’s personal and exclusive rights in his wife with which there could be legal interference by another man’s criminal conversation with the wife. Id. at 481, 24 S.Ct. 505. Such rights, by their very nature, were, of course, intangible. Yet, intangible though they were, the husband’s rights were identifiable and exclusive to him. In recognizing that these legally protectible interests were of the kind that fell within Section 17,[5] the Supreme Court wrote:
[T]he husband has certain personal and exclusive rights with regard to the person of his wife which are interfered with and invaded by criminal conversation with her; . . . that an assault of this nature may properly be described as an injury to the personal rights and property of the husband, which is both malicious and willful.
Id. at 481, 24 S.Ct. at 506 (emphasis added). And:
[T]he cause of action by the husband is based upon the idea that the act of the defendant is a violation of the marital rights of the husband in the person of his wife, to the exclusion of all others, and so the act of the defendant is an injury to the person and also to the property of the husband.
Id. at 485, 24 S.Ct. at 508 (emphasis added).
Here, Lasagna held no personal or property rights in Progressive “to the exclusion of all others.” At best, Lasagna had an expectancy that it would be paid from the general assets of Progressive, a right deserving no greater protection under Section 17(a)(8) than that afforded to any other unsecured creditor. Moreover, there is no allegation in the record that appellees directed any of their activities directly at this generalized expectancy of Lasagna. Rather, the breach of duty by appellees, as found by the state court, was directed at Progressive, an entity in which Lasagna held no legally protectible interest that differed from that held by other general creditors.
The majority’s view would be correct if the debt had been secured by specified collateral which had been converted by appel-lees. See, e. g., McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); In re Nance, 556 F.2d 602 (1st Cir. 1977); Probst v. Jones, 262 Mich. 678, 247 N.W. 779 (1933). Then, clearly, we could in good conscience write that appellees had deliberately injured “property” of the appellant. See First National Bank of Lansing v. Padjen, 61 Ill.App.2d 310, 210 N.E.2d 332, 334 (1965) (“That the mortgagee’s interest in the chattel securing a loan is a protectible property cannot be doubted.”). Here, however, there was no willful damage to any “property” of Lasagna; therefore, I *399 am convinced that the lower courts were absolutely correct in holding that Section 17(a)(8) is not applicable. My conviction as to this is fortified when I compare Section 17(a)(8) to Section 17(a)(4), which clearly is applicable. Congress has provided one exception to discharge under the facts as alleged by Lasagna. To interpret Section 17(a)(8) as the majority has done not only is unnecessary, but also, I submit, expands the Section’s meaning beyond all logical reason. I cannot conceive that the Congress, when enacting the Section, intended that its enactment should ever be given such an expansive interpretation.
As to the issue involving Section 17(a)(8), I would therefore affirm the judgment of the District Court.

. 11 U.S.C. § 35(a)(4).

. 11 U.S.C. § 35(a)(8).

. Grappling with just such an attempt to define “property,” the Supreme Court wrote:
The accurate delimitation of the concept ‘property’ would afford a theme especially apposite for amplificative philosophic disquisition; but the bankrupt law is a prosy thing, intended for ready application to the everyday affairs of practical business, and when construing its terms we are constrained by their usual acceptation in that field of endeavor.
* * * * * *
At most it [property] denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word’s meaning as employed in ordinary speech and business, and the same significance attaches to it in many carefully prepared writings.
Gleason v. Thaw, 236 U.S. 558, 560-61, 35 S.Ct. 287, 288-89, 59 L.Ed. 717 (1915).

. My research has uncovered no cases that have given Section 17(a)(8) protection to such an undifferentiated expectancy as has the majority here. To the contrary, in those cases dealing with the dischargeability of debts arising out of a bankrupt’s “willful and malicious” interference with a creditor’s ability to collect on his account, Section 17 “property” has been *398 recognized to have been injured only in more limited contexts such, for example, as when the interference has been directed at security interests in real property, personalty, or accounts receivable. See, e. g., McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916) (corporate stock held as security for indebtedness); In re Nance, 556 F.2d 602 (1st Cir. 1977) (assignment of deferred wages); Baker v. Bryant Fertilizer Co., 271 F. 473 (4th Cir. 1921) (accounts assigned as security); Sommerfíeld v. Klinkowitz, 245 Wis. 619, 15 N.W.2d 850 (1944) (mortgaged property held as security); Probst v. Jones, 262 Mich. 678, 247 N.W. 779 (1933) (mortgaged property); Excel Finance Camp, Inc. v. Tannerhill, 140 So.2d 202 (La. App.1962) (mortgaged property held as security on indebtedness); Wheaton v. Chandler, 68 Ohio App. 474, 42 N.E.2d 193 (1941) (attorney’s retaining lien); see also In re Blauweiss, 23 N.Y.S.2d 907 (City Ct. 1940) (conversion of emerald).

. Tinker v. Colwell, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), was decided under the Bankruptcy Act of 1898, ch. 541, § 17, 30 Stat. 550 (1898). The exception to discharge in question here was then contained in Section 17(a)(2), which then, in relevant part, read:
(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . (2) are liabilities for willful and malicious injuries to the person or property of another .