In re Ronald M. GUILMETTE, Sheila A. Guilmette, Debtors.

Ronald M. GUILMETTE, Sheila A. Guilmette, Plaintiffs,

v.

PEOPLE'S SAVINGS BANK, Defendant.

Bankruptcy No. 800504.
Adv. Nos. 800158, 800168.

United States Bankruptcy Court,
D. Rhode Island.

July 16, 1981.

Milton Bernstein, Providence, R. I., for debtors.

Alfred G. Thibodeau, Stephen Shechtman, Providence, R. I., for defendant.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Debtors' complaint to avoid two judicial liens, and on People's Savings Bank's counterclaim opposing the discharge of a debt allegedly owed to the Bank by the Debtors.

The Debtors, Ronald and Sheila Guilmette, are husband and wife. On January 26, 1977, Ronald and his brother, William Guilmette, each applied for separate loans of $8,790 from People's Savings Bank. Both loan applications were approved, and on January 27, 1977, simultaneous closings were held at the Bank. Present were the Guilmette brothers, their wives, and the Bank manager, Daniel Barber. The Debtors executed a promissory note containing the following language: "As additional security for this loan, the undersigned grants to the Bank a security interest and equity

mortgage on property located at 67 Pine Hill Avenue, Johnston, Rhode Island." William Guilmette and his wife Donna also signed two original mortgages, granting an equity mortgage on the same 67 Pine Hill Avenue real estate. Donna Guilmette was at all times material to this case the record title holder of the residence located at 67 Pine Hill Avenue, Johnston, Rhode Island.[1] After the closing, checks were made payable to Ronald and William Guilmette, and the proceeds were used to purchase equipment for the part-time air charter business in which the brothers were engaged.

In February, 1978, the Debtors purchased a house located at 202 Fairfax Drive, Warwick, Rhode Island. On June 28, 1978, they received a second loan from People's Savings Bank in the amount of $6,800.00 for home improvements, and as security they gave the Bank an equity mortgage on the Fairfax Drive property. This mortgage provides that it is ". . . to secure the payment and performance of any and all other present and future indebtedness and obligations, primary or contingent, direct or indirect, secured or unsecured, of the mortgagor(s) and other person(s) liable on said note and of the successor(s), if any."

The Debtors defaulted on their original 1977 loan, and the Bank brought an action in State court to collect that obligation. Judgment was obtained in the amount of $8,161.62 plus interest. The Debtors also defaulted on their credit card account with the bank, and judgment was obtained in that case for $451.62. In both cases execution was levied against the Debtors' real estate. The Debtors now seek to have both judicial liens avoided pursuant to § 522(f).[2]

The Bank asserts that the Debtors have no equity in the Fairfax Drive property and has filed a counterclaim, alleging that the 1977 loan was procured by false representation and fraud in connection with the granting of a security interest on the Pine Hill Avenue real estate, and seeking a determination of nondischargeability of the 1977 loan pursuant to § 523(a)(2) of the Bankruptcy Code, which bars discharge of a debt obtained by false written statements concerning the debtors' financial condition. Additionally, the Bank urges this Court to find that the equity mortgage executed as security for the Debtors' 1978 loan incorporates the original 1977 loan as well.

### The 1978 Mortgage

■ The first issue presented is whether the balance of the 1977 loan is covered by the 1978 mortgage. The language of the 1978 mortgage is clear upon its face. It explicitly provides that the mortgage is "to secure the payment and performance of any and all other . . . indebtedness and obligations. . . ." At the time the Debtors executed the mortgage, they were indebted to the Bank for the 1977 loan. It is not within the authority of this Court to upset or interfere with the rights of individuals to enter into contracts. Parties are bound by their signatures to a contract whether or not they read the document, unless there is a showing of fraud. *See* 17 Am.Jur.2d, Contracts § 149. In the instant case, the Debtors do not allege fraud on the part of the Bank. Absent fraud or other special circumstances, lack of knowledge as to the contents of a written agreement does not affect the liability of one who signs it. *See* 11 Am.Jur.2d, Bills and Notes § 695; 17 Am.Jur.2d, Contracts § 149. Moreover, it is well settled that a person who signs an agreement without reading it, after having the opportunity to do so, cannot shield himself from liability merely because he was uninformed of its contents. *See* Am.Jur.2d, Fraud and Deceit § 268.

Accordingly, I conclude that the 1978 mortgage executed by the Debtors to People's Savings Bank also secures the payment of the balance due on the 1977 loan. The question whether the judicial lien based on the 1977 loan is avoidable need not be

---

1. At no time have the Debtors had any interest in the Pine Hill Avenue property.

2. Section 522(f) provides, in part, that: ". . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under . . . this section, if such lien is (1) a judicial lien."

addressed at this time, since that loan is included in the 1978 mortgage.

■ The Rhode Island Superior Court has decided that the amount due the Bank by the Debtors is $8,161.63, plus interest from April 1, 1980. The 1978 mortgage secures this amount, as well as the 1978 loan of $6,800.00 together with interest and attorney fees, for a total in excess of $15,-000.00. Although the Debtors recently sold their residence with the approval of this Court for $44,000.00, it is clear that when the $15,000.00 owed to the Bank is added to a first mortgage of $30,800.00, a $2,640.00 real estate brokers commission, and other closing costs, the Debtors are left with no equity to claim as exempt. Therefore, the Debtors may not avoid the judicial lien based on the credit card debt because such lien does not impair an exemption to which they would have been entitled.

### Dischargeability of the 1977 Loan

■ To the extent that the Guilmettes' indebtedness to the Bank is not satisfied from the proceeds of the sale of their residence, the dischargeability of their 1977 loan must be considered.

One of the primary purposes of the Bankruptcy Code is to afford debtors a new opportunity and a clear chance for the future, unhampered by pressures of debts from the past. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Therefore, exceptions to discharge are limited to those plainly expressed in the statute. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *In re Kokoszka,* 479 F.2d 900 (2d Cir. 1973), *affirmed,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), *reh. den.,* 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131.

Section 523(a)(2)(B) excepts from discharge any debt

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

In order for a creditor to prevail in this type of proceeding, it must affirmatively appear that such representations were knowingly and fraudulently made, and that they were relied upon by the allegedly defrauded party. 3 Collier on Bankruptcy (15th Ed.), § 523.09.

The issue in the instant case is whether the Debtors intended to make false and fraudulent statements, and whether the Bank reasonably relied upon said statements. It is the Bank's contention that the Debtors obtained the 1977 loan by making false statements and that the provision in the promissory note executed by Debtors, which purports to grant a security interest in real estate located at 67 Pine Hill Avenue, was a false statement upon which the Bank reasonably relied to its detriment.

The burden of proof is with the Bank to prove each element of its case.[3] To sustain this burden, the Bank is required to show by clear and convincing evidence that the Debtors made a false statement in writing for the purpose of obtaining money, with intent to deceive, and reliance on that representation by the creditor to its detriment. Additionally, the Bank must prove that its reliance was reasonable.

I find that the Bank has not sustained that burden. Rather than a case of false or fraudulent representation, the evidence establishes that there existed here a mutual misunderstanding between the parties, or at most, a broken promise. The record indicates, and I find as a fact, that the Debtors were not aware that real estate security was a prerequisite for the 1977 loan. The bank manager's memory was unclear, at best, and his testimony does not establish that he ever communicated to the Debtors

---

**3.** Bankruptcy Rule 407.

that real estate security was the sine qua non of the loan. More important, the bank manager, Mr. Barber, was well aware that Donna Guilmette was the sole owner of record of the Pine Hill Avenue property, and that the Debtors had no interest in that property. Mr. Barber had known all these people for a long time and was aware of their property ownership status. In the circumstances, any alleged reliance by the Bank on the representations of the Debtors was not reasonable. *See Bennett v. W. T. Grant Co.*, 481 F.2d 664 (4th Cir. 1973), where the court of appeals refused to affirm a finding of nondischargeability under § 17(a)(2), even though the debtor's conversion was willful and malicious, because the creditor was aware of debtor's conversion, but failed to take reasonable steps to protect its security. Based on all of the evidence, I find that the Debtors made no false statements upon which the Bank reasonably relied, and conclude that the debt is not barred from discharge under § 523(a)(2)(B).

The result in the dischargeability aspect of this case requires the Court to make a further determination as to whether to charge costs and attorney fees to the Defendant. Section 523(d) provides that

> If a creditor requests a determination of dischargeability of a *consumer debt* under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, *unless such granting of judgment would be clearly inequitable.* (emphasis added)

I conclude that this section is inapplicable to the instant case because the 1977 loan to the Debtors was a loan for business purposes to the air charter enterprise in which the Guilmette brothers were engaged. However, even if that loan could be considered a consumer debt, the fact that the Debtors gave false information to People's Savings Bank, even though lacking an intent to deceive, would make the award of costs and attorney fees to the Debtors "clearly inequitable." *Camden National Bank v. Archangeli*, 6 B.R. 50, 7 BCD 63 (Bkrtcy.D.Me.1980).

The result in the dischargeability aspect of this case requires the Court to make a further determination as to whether to charge costs and attorney fees to the Defendant. Section 523(d) provides that

> If a creditor requests a determination of dischargeability of a *consumer debt* under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, *unless such granting of judgment would be clearly inequitable.* (emphasis added)

I conclude that this section is inapplicable to the instant case because the 1977 loan to the Debtors was a loan for business purposes to the air charter enterprise in which the Guilmette brothers were engaged. However, even if that loan could be considered a consumer debt, the fact that the Debtors gave false information to People's Savings Bank, even though lacking an intent to deceive, would make the award of costs and attorney fees to the Debtors "clearly inequitable." *Camden National Bank v. Archangeli*, 6 B.R. 50, 7 BCD 63 (Bkrtcy D.Me.1980).