**In the Matter of Richard L. ROWE, Debtor.**

**FIRST TENNESSEE BANK f/k/a United American Bank in Knoxville, Plaintiff,**

**v.**

**Richard L. ROWE, Defendant.**

**Bankruptcy No. 83–1289.**
**Adv. No. 83–810.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 21, 1984.

Raymond J. Rotella, Orlando, Fla., for plaintiff.

Don M. Stichter, Tampa, Fla., for defendant.

FINDINGS OF FACT CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and two matters are under consideration. The first

matter to be considered is the dischargeability, vel non, of a debt owed by Richard L. Rowe, (the Debtor) to First Tennessee Bank f/k/a United American Bank of Knoxville. The second matter for consideration is the Debtor's right to the protection of the general discharge in Bankruptcy.

The record as established at the final evidentiary hearing reveals the following:

The Debtor is one of three shareholders of Leisure Associates, Inc. In order to enable Leisure Associates, Inc. to secure financing for the construction of an amusement center in Knoxville, Tennessee, the Debtor executed a personal guarantee of a note of Leisure Associates, Inc. payable to United American Bank of Knoxville (United American). United American subsequently ceased operations and the Plaintiff, First Tennessee Bank (First Tennessee), purchased the note and is the present holder of the note. Leisure Associates, Inc. is presently in default under the terms of the note and First Tennessee now seeks to collect the amount owing from the Debtor based on his guaranty.

In making the loan, United American requested and received, in May of 1979, a personal financial statement from the Debtor. The Debtor also submitted an updated financial statement in March, 1980. In relevant part, both financial statements were identical. It is First Tennessee's contention that United American relied upon the Debtor's financial statements when it made the loan to Leisure Associates, Inc., that the financial statements were materially false with respect to the Debtor's financial condition and that the Debtor made the financial statements and submitted them to United American with the intent to deceive United American. First Tennessee, therefore, claims that the debt owed to it is non-dischargeable pursuant to the Bankruptcy Code which provides as follows:

§ 523 Exceptions to Discharge

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) ...

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) ...

(B) use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

More specifically, it is First Tennessee's contention that the Debtor overstated the value of two parcels of property then owned by the Debtor. The first parcel of property is located in Lake Delton, Wisconsin and was listed on both financial statements as having a present market value of $70,000 owned by the Debtor free of any encumbrances. The second parcel is located in Silver Springs, Florida and was listed on both financial statements as having a present market value of $574,000 subject only to a $100,000 mortgage. Both parcels of property have now been traded for a single parcel of improved property located in Polk County, Florida claimed by the Debtor as his homestead, thus exempt by virtue of Article X Section 4 of the Florida Constitution which property the Debtor admits is worth only $250,000. The Plaintiff presented no evidence as to the true value of the Silver Springs or Lake Delton property at the time the financial statements were submitted by the Debtor. Nor did the Plaintiff present evidence as to the value of the Polk County property at the time of the trade. The Plaintiff relies simply on the difference in value of the two properties as shown on the financial statement and the Debtor's valuation of the Polk County property at the time of the trade to show that the financial statements were materially false.

The Debtor testified that for the purposes of the trade, the Silver Springs property was valued at $305,000 and the Lake Delton property was valued at $75,000. It is undisputed that at the time of the trade,

**36**

the Silver Springs property was subject to a $130,000 mortgage. Based on the foregoing, there is a difference of $264,000 between the value of the properties as shown on the financial statement and as valued for purposes of the trade.

Although the value of the Silver Springs property was shown on the financial statements as $574,000 and the Debtor did subsequently value it at only $305,000, it is not clear that at the time the financial statements were submitted, the valuations were materially false. The circumstances at the time of the trade were substantially different from those at the time the financial statements were made. Three years had elapsed, the Debtor was now in desperate financial condition and no longer had the luxury of waiting for the best price at which to sell the parcels he traded. Clearly, the circumstances were in no way the same as those which were contemplated when making the original valuation. The significant change in circumstances makes less significant the value received on the trade when determining the value of the property three years prior to the trade. Therefore, although by the Debtor's own admission the value received at the time of the trade was significantly lower than that given on the financial statement, it is not clear that the value on the financial statements was materially false when given.

■ In any event, even if this Court were to find the value given on the financial statements materially false, it is clear that the Debtor did not give the financial statements with the specific intent to deceive United American. It is undisputed that the Debtor relied upon various sources in arriving at the values he placed on the properties on the financial statement. As the Debtor stated, he relied upon a report made by Mr. Randal Schrader, a consultant on a Holiday Inn project located near the Silver Springs property. The Debtor also testified that he consulted with a real estate broker who was familiar with property values in the Silver Springs area. In light of the foregoing, the Debtor's reliance on these sources was reasonable and repre-

sented a good faith effort to value the properties as accurately as possible regardless of whether the valuations were in fact accurate. It is clear then, that the Debtor, at least in his own mind, gave a true account of the value of the properties. Therefore, the Court is satisfied that the Debtor did not submit the financial statements with the requisite intent to deceive as required by the Bankruptcy Code, which is a positive fraud. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975); *In re Dolnick*, 374 F.Supp. 84 (N.D.Ill.1974); *Public Finance Corporation of Redlands v. Taylor (In re Taylor)*, 514 F.2d 1370 (9th Cir. 1975).

■ In addition, the Court finds insufficient evidence of reasonable reliance upon the financial statements by United American when it made the loan. Other than some general discussion in the deposition of Robert L. Wheeler, the loan officer in charge of the loan, as to the procedures normally followed by United American, the record is devoid of any evidence of reliance, reasonable or otherwise.

■ The primary purpose of bankruptcy law is to relieve the debtor from the burden of indebtedness. *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971). The Courts, therefore, narrowly construe exceptions to discharge against the creditor and in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Accordingly, the creditor bears the burden or proving that the debt owed to him falls within the statutory exception. *Household Financial Corp. v. Danns, (In re Danns)*, 558 F.2d 114, 116 (2d Cir.1977); *Murphy and Robinson Investment Co. v. Cross (In re Cross)*, 5 C.B.C.2d 1549, 666 F.2d 873 (5th Cir.1982). Inasmuch as the Plaintiff has failed to prove three of the four elements necessary to sustain a claim of non-dischargeability pursuant to 11 U.S.C. § 523(a)(2)(B), this Court is satisfied that Judgment should be entered in favor of the Defendant/Debtor with regard to the claims of non-dischargeability.

■ In addition to the claim of non-dischargeability under § 523(a)(2)(B), First Tennessee also claims that the Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2). First Tennessee claims that the trade of land outlined above was for the purpose of converting non-exempt property to exempt property as that term is contemplated by 11 U.S.C. § 522, thus, it amounted to a transfer made with intent to hinder, delay or defraud a creditor. It should be noted that the property the Debtor received on the trade, as noted earlier, is a large lake-front home which the Debtor now claims is exempt as homestead property. Both the Silver Springs and Lake Delton properties were unimproved lots at the time the Petition was filed in this case.

It is First Tennessee's contention that the land trade outlined above was made with the intent to hinder, delay or defraud First Tennessee. While it is true that the Debtor did exchange non-exempt property for exempt property, practically on the eve of filing his petition, it is clear from the legislative history of 11 U.S.C. § 522 that such activity is not fraudulent.

"As under current law, the debtor will be permitted to convert nonexempt property into exempt property before filing a bankruptcy petition ... the practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law." H.R. No. 595, 95th Cong., 1st Sess. 361 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6317.

It is clear, therefore, that First Tennessee has failed to allege facts which, even if taken as true, would warrant this Court denying a discharge to the Debtor. Be that as it may, the Court is satisfied that judgment should be entered in favor of the Defendant/Debtor and against First Tennessee on the claim pursuant to 11 U.S.C. 727(a)(2).

A separate final judgment will be entered in accordance with the foregoing.