In re Gail Sforza **BREWER** a/k/a Gail M. Sforza, Debtor.

June **BARWICK**, Plaintiff,

v.

Gail Sforza **BREWER** a/k/a Gail M. Sforza, Defendant.

Bankruptcy No. 84 B 20426.
Adv. No. 85 ADV. 6110.

United States Bankruptcy Court,
S.D. New York.

June 19, 1986.

Gruen, Muskin & Thau, New York City, for June Barwick.

Hall, Dickler, Lawler, Kent & Friedman, White Plains, N.Y., for debtor.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The plaintiff, June Barwick, has filed a complaint objecting to the discharge in bankruptcy of the debtor, Gail Sforza Brewer, pursuant to 11 U.S.C. § 727(a)(3) and (4) and objecting to the dischargeability of her claim against the debtor pursuant to 11 U.S.C. § 523(a)(2)(B). At the trial, the plaintiff was allowed to discontinue her objection to the debtor's discharge in bankruptcy and to proceed with her complaint directed to the nondischargeability of her claim in accordance with 11 U.S.C. § 523(a)(2)(B).

The plaintiff asserts that she owns a private house in Bedford, New York, which she leased to the debtor pursuant to a written lease for use by the debtor as a private residence and a corporate office in which the debtor would be engaged in writing books and articles and in the preparation of materials for various lectures. The plaintiff contends that she entered into the lease with the debtor on the basis of written information and documents furnished by the debtor which purported to reflect the debtor's financial ability to perform in accordance with the terms of the lease. The plaintiff further alleges that the written documentation furnished to her by the debtor was materially false respecting the debtor's financial condition and that the plaintiff reasonably relied on these documents, which the plaintiff says were prepared by the debtor and furnished by her with intent to deceive. The plaintiff further alleges that as a result of the debtor's deception as to her financial condition, the debtor obtained the use of the plaintiff's property for a period of approximately six months and then moved out, owing rent and other obligations, which resulted in damages claimed by the plaintiff to be nondischargeable in the sum of $29,773.00.

### FINDINGS OF FACT

1. On October 5, 1984, the debtor, Gail Sforza Brewer, filed with this court her petition for an adjustment of her debts pursuant to Chapter 13 of the Bankruptcy Code. On February 17, 1985, the debtor's Chapter 13 case was converted for liquidation under Chapter 7 of the Bankruptcy Code.

2. The debtor is a writer of books, such as "Pregnancy After 30 Workbook", "What Every Pregnant Woman Should Know", "Right From The Start", "Breastfeeding, Words & Pictures", "Nine Months, Nine Lessons", "Brewer, Medical Diet", "Eating For Two" and "Italian Family Reunion Cookbook". She also gives lectures on the subjects contained in her books.

3. The plaintiff, June Barwick, owns a large home in Bedford which is nearly one hundred fifty years old and which she rents to acceptable creditworthy tenants.

4. In the fall of 1983 the debtor proposed to rent the plaintiff's Bedford, New York home for a period of one year and seven months commencing November 16, 1983. The plaintiff requested from the debtor certain financial information in order to determine if the debtor was financially capable of performing under the lease. The debtor furnished the plaintiff

with a copy of the debtor's 1982 income tax return, a list of references and a personal forecast of the debtor's income for 1983 and 1984. The debtor also furnished to the plaintiff a copy of a 1982 income tax return for the debtor's personal corporation, Sforzesco, Inc. ("Sforzesco"). This corporation is engaged in conduct intended to further the debtor's publishing and lecturing activities. The debtor also submitted to the plaintiff a document which described the activities of the debtor's corporation, Sforzesco.

5. Based on these documents and after checking with the people named in the debtor's list of references, the plaintiff entered into a written lease with the debtor dated November 14, 1983, to commence on November 16, 1983 for a period of one year and seven months, ending June 15, 1985. The monthly rent was $1750 per month. A security deposit of $3500 was posted. The lease provided that the debtor was to maintain and repair the premises. The debtor was also obligated to pay for trash removal, water softener, back field mowing, annual cleaning of the oil burner, the oil burner service contract, chimney flue cleaning, fuel and utilities.

6. In the Spring of 1984, the debtor advised the plaintiff that she was unable to pay the rent. At that time the debtor had already run up a fuel bill of $2644.31, (which the debtor lists in her schedules as unpaid). The debtor moved out of the plaintiff's premises on May 15, 1984, owing two months back rent.

7. The plaintiff engaged a real estate agent to find another tenant, which was accomplished at an expense of $1791. The plaintiff rented the premises to another tenant as of August 1, 1984 for the same monthly rental of $1750 per month. The plaintiff was also required to pay for fuel in the amount of $607.16, together with trash removal, water softener and lawn care in the sum of $1700. These items were the debtor's responsibility under the lease.

8. Thus, the plaintiff lost four and one half months' rent, or $7875, less two months security, for a net rent loss of $4375, together with properly incurred expenses of $4098.16, for a total of $8,473.16. Additional expenses are claimed for tort and contract damages which were not directly related to any alleged false representations or, which have not been sustained.

9. The written documents submitted by the debtor to support her financial responsibility under the lease contained false and incorrect information which the debtor knew, or should have known, were not truthful. This information was submitted by the debtor to the plaintiff with intent to deceive the plaintiff into believing that the debtor was financially capable of assuming the responsibilities under the lease for the plaintiff's house, including the payment of rent.

10. The debtor's Personal Forecasted Statement of Income for 1983 and 1984, reflected that the plaintiff was entitled to royalties for published books in the sum of $131,000 for 1983. The plaintiff's 1983 income tax return shows that her gross business income was $16,817.00. Her closely held corporation, Sforzesco, listed gross receipts for 1983 as $28,700. The debtor's Personal Forecasted Statement of Income for 1983 reflects a $19,000 amount due for a seminar in perinatal education. However, when the debtor signed the lease with the plaintiff in November 14, 1983, she already knew that this seminar series was not a success and had to be cancelled. Indeed, the debtor failed to pay the hotel in Hilton Head, South Carolina, where the seminar was to be held. This item was listed in her schedules in the sum of $1959.12. A capital gain listed as $36,000 arising out of the debtor's sale of a residence was listed by the debtor in her 1983 federal income tax return as $16,817.00. The debtor's Personal Forecasted Statement of Income for 1983 also lists $6000 as rental income actually received from her corporation, Sforzesco. This statement is not true. The debtor testified that Sforzesco paid $6000 in rent to the landlord which constituted an indirect benefit to the debtor. However, she never received $6000 in

rent from Sforzesco. Likewise, as of November 14, 1983 the debtor knew that she would not be receiving anywhere near $131,000 in payments and royalties for 1983.

11. In short, the written financial information which the debtor furnished to the plaintiff to support the debtor's financial ability to assume the responsibilities under the lease for the plaintiff's house, was materially false and deceptive. These false written financial documents were submitted by the debtor to the plaintiff with the intent to deceive the plaintiff, who reasonably relied upon this information and was deceived to her damage in the allowable amount of $8473.16, which is nondischargeable.

## DISCUSSION

Very rarely does a court encounter a situation where a lessor claims reliance on materially false statements in writing with respect to the financial ability of a prospective lessee to perform under the terms and conditions of a lease for residential property. This is not usually regarded as a credit transaction because the lessee does not get to keep the property. The title to the property continues to be held by the lessor. However, this is a credit transaction to the extent that the lessee is obligated to pay for the right of possession which is transferred in exchange for the lessee's obligation to pay rent. When a lessor of residential property seeks proof of the financial condition of a prospective lessee as a condition precedent to leasing the property to the prospective lessee, such lessor is generally entitled to rely on the submitted documentation and to assume that the prospective lessee will submit truthful information. The lessee's right of possession under the lease is a property right which may be transferred or withheld depending on the creditworthiness of the lessee. Thus, the lessee obtains a valuable property right from the lessor in exchange for the lessee's obligation to make payments in accordance with the terms of the lease. A debt for this property right may be held to

be nondischargeable if incurred through fraud and deceit under conditions described in 11 U.S.C. § 523(a)(2)(B). As defined by the Supreme Court:

> [Property] denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process.

*Gleason v. Thaw,* 236 U.S. 558, 561, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Thus, a party who leases property to a debtor is entitled to look to 11 U.S.C. § 523(a)(2) if the lessee obtains the property under conditions proscribed in 11 U.S.C. § 523. *Telco Leasing, Inc. v. Patch (In re Patch),* 24 B.R. 563 (D.Md.1982); *IFG Leasing Company v. Vavra (In re Harms),* 53 B.R., 134 (Bankr.D.Minn.1985); *Lowell Holding Corp. v. Granovetter (In re Granovetter),* 29 B.R. 631 (Bankr.E.D.N.Y.1983).

## BURDEN OF PROOF

A party who objects to the dischargeability of a debt under 11 U.S.C. § 523 has the burden of proving all of the facts essential to sustain the objection by clear and convincing evidence. *In re Bogstad,* 779 F.2d 370, 372 (7th Cir.1985); *Telco Leasing, Inc. v. Patch (In re Patch),* 24 B.R. at 565; *Lowell Holding Corp. v. Granovetter (In re Granovetter),* 29 B.R. at 639; *National Bank of North America v. Newmark (In re Newmark),* 20 B.R. 842, 853 (Bankr.E.D. N.Y.1982). It has been clearly established by the plaintiff in this case that the documents which the debtor submitted to her were statements as to the debtor's income and also reflected the sources of the debtor's income, together with a list of references. These written documents as to the debtor's income and royalty rights were representations as to the debtor's financial condition. *Lowell Holding Corp. v. Granovetter (In re Granovetter),* 29 B.R. at 639.

## INTENT TO DECEIVE

This court has found that the representations as to the debtor's income were materi-

ally false. The debtor was well aware that her income was greatly below the stated figures when she entered into the lease with the plaintiff. Indeed, some of the figures listed as income, including the sum of $6000 as rent due from the debtor's corporation were totally false. In these circumstances, an inference may be drawn that the debtor intended to deceive the plaintiff by the submission of these false figures with respect to the debtor's financial condition because the debtor will be held to have intended the natural consequences of her act. *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1167 (7th Cir.1985); *Northern Trust Co. v. Garman (In re Garman)*, 625 F.2d 755, 763–64 (7th Cir.1980), *cert. denied, sub nom. Garman v. Northern Trust Company*, 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981); *Carini v. Matera (In re Matera)*, 592 F.2d 378, 380 (7th Cir.1979); *Lowell Holding Corp. v. Granovetter (In re Granovetter)*, 29 B.R. at 639; *Waterbury Community Federal Credit Union v. Magnusson (In re Magnusson)*, 14 B.R. 662, 669 (Bankr.N.D.N.Y.1981).

## REASONABLE RELIANCE

The plaintiff, who is not a sophisticated financial institution or a real estate management firm, but simply the owner of an old house in the country that she rents for additional income, did rely upon the documents submitted to her by the debtor. The plaintiff telephoned most of the references named by the debtor and did not learn anything that might disuade her from renting the house to the debtor. The debtor was the author of various books, mainly dealing with pregnancy and prenatal care. The plaintiff could not learn that many of the royalties listed by the debtor as due from publishers were not going to be paid because the publishers' cash advances to the debtor in connection with the published books had not been covered by earned royalties. In order for the plaintiff to obtain an accurate picture as to the debtor's royalties, the plaintiff would have had to obtain from each of the debtor's publishers an accounting of net royalties due to the debt-

or. The plaintiff did not have any basis for doubting the debtor's figures as to income and royalties when the plaintiff leased the house to the debtor. This is not a case where the plaintiff chose to ignore so-called "red flags" or warnings as to the debtor's financial inability to comply with an agreement, as in *Lowell Holding Corp. v. Granovetter (In re Granovetter)*, 29 B.R. at 640; or *First National Bank Dayton, Ohio v. Breen (In re Breen)*, 13 B.R. 965 (Bankr.S.D.Ohio 1981). The plaintiff in this case did contact the debtor's references and should not be faulted for having accepted financial figures from someone who appeared to be an honest, potential lessee. *See Lincoln First Bank, N.A. v. Vairo (In re Vairo)*, 40 B.R. 776, 781 (Bankr.S.D.N.Y.1984). Therefore, the plaintiff's failure to view with incredulity the written income figures as to the debtor's financial condition does not render her reliance upon these figures so unreasonable as to discharge the debtor's obligation to the plaintiff which resulted from the deceptive written statements as to the debtor's financial condition.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the persons in this case in accordance with 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

2. The plaintiff has established by clear and convincing evidence that the debtor obtained property from the plaintiff, namely the lease of plaintiff's house, by use of statements in writing that were materially false respecting the debtor's financial condition on which the plaintiff reasonably relied and which the debtor caused to be made or published with intent to deceive the plaintiff.

3. The plaintiff's damages arising out of the debtor's deceitful conduct amount to $8473.16. The balance of the plaintiff's damage claim is not directly related to the false statements in writing respecting the

debtor's financial condition or has not been established.

4. The plaintiff's allowable claim against the debtor to the extent of $8473.16 is nondischargeable in accordance with the provisions of 11 U.S.C. § 523(a)(2)(B).

SETTLE ORDER on notice.