In re Joyce Fay FREEMAN, Debtor.

Michael D. KIDDER, et al., Plaintiffs,

v.

Joyce Fay FREEMAN, Defendant.

Bankruptcy No. 88–00381.
Adv. No. 88–0038.

United States Bankruptcy Court,
E.D. Oklahoma.

Feb. 28, 1989.

Robert Inglish, Okmulgee, Okl., Raymond Burger, Oklahoma City, Okl., for plaintiffs.

Thomas J. Wilcox, Midwest City, Okl., for defendant.

ORDER

JAMES E. RYAN, Bankruptcy Judge.

On January 6, 1989, this Court conducted a Trial with regard to the above referenced adversary proceeding. Appearances were entered by Robert Inglish and Raymond Burger for the Plaintiffs and Tom J. Wilcox on behalf of the Defendant.

At the conclusion of the Plaintiffs' case in chief, the Defendant moved for a directed verdict with regard to the 11 U.S.C. § 727(a)(2)(B) and (a)(4)(A) portions of the Complaint. Since the Plaintiffs' case as presented lacked sufficient evidence and substantiation on these allegations, the oral motion for directed verdict was granted in favor of the Defendant.

Upon review of the evidence, the applicable law and the arguments of counsel, this Court FINDS:

## FINDINGS OF FACT

1. This is a "core" matter pursuant to 28 U.S.C. § 157(b). This Order is issued in compliance with Bankruptcy Rule 9021 and Rule 52, Federal Rules of Civil Procedure.

2. In 1965, Joyce Fay Freeman, the Defendant in this action, received a Workers Compensation award of some $13,500. stemming from the death of her first husband by and through injuries sustained during the course of employment. The amount was divided on the basis of $10,500 for compensation to the Defendant, and $1,000 to each of the three surviving minor children, Ricky, Michael and Timothy Kidder, the Plaintiffs in this current action.

3. The Defendant used her share of the money derived from the Workers Compensation award to purchase a house in 1967. At that time, the house was deeded in the name of "Joyce Fay Kidder, a single person."

4. In 1969, the Defendant entered a Deed of record naming Taylor (the Defendant's second husband), the Defendant and the Plaintiffs as tenants in common. The motivation behind this action was to prevent the children from a prior marriage belonging to Taylor from inheriting the property. The Defendant never informed the Plaintiffs of the entering of their names on this Deed.

Subsequently, the Defendant divorced Taylor at which time he deeded back his interest in the property to the Defendant. The evidence at the hearing indicated that it was the Defendant's intent to take the children off the Deed at that time. As a manifestation of this intent, the Defendant refers to the Divorce Decree which, although it has not been entered into evidence, has been testified to contain language which awarded sole ownership to the Defendant.

5. On March 15, 1980, the Defendant executed a lease in favor of Marshall and Stella Doonkeen. This lease contained an option to purchase which, on June 15, 1982, the Doonkeens exercised, entering into a Contract for Deed with the Defendant. The services of an attorney were not employed nor was a title search performed on the real estate pursuant to the sale or in the forming of the agreements.

6. The Doonkeens subsequently discovered the existence of the Deed naming Plaintiffs in ownership, stopping payment and initiating a lawsuit to quiet title on this particular property. As a result of this action brought in the District Court of Oklahoma County, Oklahoma, a Journal Entry of Judgment was entered on October 17, 1986, wherein ownership in the property described as:

A part of the West Half of the East Half of the East Half of the South Half of the Southwest Quarter of Section 20, Township 11 North, Range 1 West of the Indian Meridian, more particularly described as follows: Beginning at the Southeast Corner of said W/2 E/2 E/2 S/2 SW/4; thence West 150 feet; thence North 425 feet; thence East 150 feet; thence South 425 feet to the point of beginning

was determined to be owned by the parties as follows:

(a) Joyce Fay Freeman (subject to Contract for Deed held by Marshall and Stella Doonkeen)—40%

(b) Mark A. Burger—20%

(c) Michael Dewayne Kidder—20%

(d) Timothy Lee Kidder—20%

7. The District Court subsequently entered an Order on December 11, 1987, wherein it was determined that when the Defendant entered into a Contract for Deed with the Doonkeens and received payments pursuant thereto, the funds received were held in constructive trust for the benefit of the other co-tenants (i.e., the Plaintiffs). The Court further Ordered Judgment be entered against Joyce Freeman in the amount of $28,780.03 representing the brothers Kidder's undivided interest in the property.

8. Plaintiffs offered evidence at the hearing through the testimony of Ricky Dale Kidder that the children never received any benefit from the money derived from the Workers Compensation award and thus the entire amount awarded went into the payment for the home and real estate at issue in the District Court action. Further, Plaintiffs' witness testified that at the time of the change in the Deed giving partial ownership to the minor children, Ricky Dale was aware of the transfer and was asked to sign "some kind of paper" at the time. We note that the witness would have been approximately 12 years old at that time.

The Defendant refuted this testimony by stating that the Plaintiffs received for their personal use the $3,000 from the Workers Compensation award which had been segregated in a savings account.

9. Ricky Dale Kidder further testified that his interest in the property was transferred to Mark Burger in lieu of payment for legal services rendered by Raymond Burger and was subsequently transferred back to Ricky Dale Kidder in September of 1987. In September of 1988, Ricky Dale Kidder transferred his interest to the Doonkeens in exchange for a Mortgage executed to the children. Thus, it would appear that Mark Burger no longer holds an interest in this lawsuit.

## CONCLUSIONS OF LAW

A. Plaintiffs seek a determination by this Court that the judgment amount of $28,782.03 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) which states:

A discharge under § 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ...

This Section lends itself to an elemental breakdown. Each element enumerated below requires strict and complete compliance by the Plaintiffs through the evidence presented.

■ B. *EXISTENCE OF A FIDUCIARY RELATIONSHIP*—The threshold requirement under § 523(a)(4) to hold a debt nondischargeable before determining the issue of whether a fraud or defalcation was perpetrated is a finding that the debtor/defendant was a fiduciary of the creditors/plaintiffs. *In re Taylor*, 58 B.R. 849, 852 (Bankr.E.D.Va.1986). Case law interpreting § 17(a)(4) of the Bankruptcy Act of 1898 which is the predecessor of § 523(a)(4) is applicable to Code cases as the language of both provisions is "almost identical." *In re Paley*, 8 B.R. 466, 468 (Bankr.E.D.N.Y. 1981). This Section of the Bankruptcy Code has been for more than a century construed narrowly and strictly by the Supreme Court. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Likewise, lower Courts have adhered to the principal of strict construction as does this Court. *Matter of Angelle*, 610 F.2d 1335, 1338–39 (5th Cir.1980).

The earliest Supreme Court cases construing the concept of a fiduciary in a bankruptcy setting strove to promote the bankruptcy law's "fresh start" policy and gave extremely narrow meaning to the term fiduciary. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).

■ The question of who is a fiduciary is to be determined under Federal law with consideration given to State law on the

matter. *In re Black,* 787 F.2d 503, 505–06 (10th Cir.1986).

■ C. Several factors are considered in determining whether a debt was incurred while acting in a fiduciary capacity. First, the trust relationship must exist prior to the act creating the debt and "without reference thereto." *Davis v. Aetna Acceptance Co.,* supra at 333, 55 S.Ct. at 154. This also means that the fiduciary capacity must have existed before the alleged fraud or defalcation which gave rise to the claim. With this requirement, a constructive trust could never in fact create a fiduciary relationship. *In the Matter of Angelle,* supra at 1338–39.

■ In the instant case, the alleged fraud or defalcation (i.e., the sale of the subject property without the knowledge or consent of the Plaintiffs nor the sharing of the proceeds with them) which gave rise to the debt occurred *prior* to the creation of a trust relationship by and through the decision of the District Court of Oklahoma County which designated the Defendant as constructive trustee for the funds received from the sale of the subject property. Thus, this factor is resolved in favor of the Defendant.

Second, the wrongful act creating the debt must have been done during the course of the trust relationship. *In re Livingston,* 40 B.R. 1018, 1019–20 (Bankr. E.D.Mich.1984).

The facts before this Court demonstrate that the alleged fraud was done prior to any possible fiduciary relationship having existed.

■ Third, the debt that arises from a breach of a fiduciary duty under § 523(a)(4) is distinguished in that it is based on an express, technical or statutory trust. Express or technical trusts are formed by an agreement between the parties to impose a trust relationship. *In re Levitan,* 46 B.R. 380, 383 (Bankr.E.D.N.Y.1985). One Court has explained the limitations of this requirement as:

> Simply because one is supposed to do something and doesn't and even if one does not pay for property of another

trusted to him, a fiduciary capacity has not existed, in the bankruptcy sense, in the first place.

*In re Kirk,* 8 B.R. 258, 259 (Bankr.E.D.Va. 1981).

■ Thus, debts arising from equitable trusts or trusts implied in law (i.e., such as constructive trusts) are excluded from the parameters intended for § 523(a)(4). *Matter of Schnitz,* 52 B.R. 951, 955 (Bankr.W. D.Mo.1985).

In the instant case, there is no doubt that the only way that a trust relationship, and thereby a fiduciary relationship, may be extrapolated from the circumstances is if one imposes a constructive trust as the District Court did in this case. As stated above, constructive trusts under the law are deemed inapplicable for establishing the strict fiduciary relationship required by § 523(a)(4).

The final factor which is determinative as to whether a fiduciary capacity exists is that the money or property on which the debt is based must have been entrusted to the defendant/debtor/fiduciary. *In the Matter of Barton,* 465 F.Supp. 918 (S.D.N. Y.1979). This has generally been interpreted to mean that a "clear intention" by the parties to create a definable trust res must be demonstrated before a fiduciary capacity can be found. *In the Matter of Cross,* 666 F.2d 873, 881 n. 12 (5th Cir.1982).

In the instant case, the testimony of the Defendant establishes that there was no intention by the parties to create a fiduciary relationship nor a trust res since the specific motivation behind the inclusion of the Plaintiffs on the Deed was to prevent the inheritance of the property by the children of her new husband. No evidence was offered by the Plaintiffs to contradict this intent and since the children were minors at the time of the formation of the Deed, it is entirely consistent to believe that this was the intended purpose.

■ D. Additionally, the parties were, at best, tenants in common, and in that capacity, under State law, there is no fiduciary relationship. *Carter Oil Co. v. Crude Oil Co.,* 201 F.2d 547 (10th Cir.

1953). Thus, the Plaintiffs cannot establish the requisite fiduciary capacity under Federal or State law.

E. *EXISTENCE OF FRAUD OR DEFALCATION*—Since the Plaintiffs failed to satisfy the threshold requirement of the establishment of a fiduciary capacity, a determination of the existence of fraud or defalcation is unnecessary by this Court.

F. *EXISTENCE OF EMBEZZLEMENT OR LARCENY*—The Plaintiffs do not allege in their Complaint nor did they establish through introduction of evidence at the Trial any transgressions on the part of the Defendant which rise to the level of either embezzlement or larceny, the remaining two possibilities for a finding of nondischargeability under § 523(a)(4).

G. Plaintiffs' counsel urges that the total amount of debt at issue is $4,653.58 as established by this Court's Order of November 7, 1988. We disagree with counsel's conclusion due to the fact that the relief requested at that time was a determination of an award for actual and punitive damages as a result of a violation of 11 U.S.C. § 362(h). Since this Court was not asked at that time to render a decision on dischargeability, the application of that prior Order is limited to the specific purpose for which relief was requested and has no relevance to this decision.

IT IS THEREFORE ORDERED that Judgment be entered in favor of the Defendant and thus the Judgment rendered from the District Court of Oklahoma County in the amount of $28,780.03 is hereby deemed dischargeable.