In the Matter of Gregory & Gina GROFF, Debtor.

Michael & Michele DeBlasio, Plaintiffs,

v.

Gina Groff, Defendant.

Bankruptcy No. 02–11150/JHW. Adversary No. 02–1091.

United States Bankruptcy Court, D. New Jersey.

Feb. 24, 2003.

Cheryl L. Cooper, Esq., Poplar & East-lack, Turnersville, NJ, for the Plaintiffs.

Joseph S. Chizik, Esq., Mount Laurel, NJ, for the Defendant.

**OPINION**

JUDITH H. WIZMUR, Bankruptcy Judge.

In this tragic case, I must resolve the parties' competing motions for summary judgment. The plaintiffs, Michael and Michele DeBlasio, seek to declare nondischargeable their claim against the debtor, Gina Goff, pursuant to 11 U.S.C. § 523(a)(6), alleging that the debtor caused a willful and malicious injury.[1] The mate-

---

**1.** Count Two of the plaintiffs' complaint, which alleged a cause of action under 11

rial facts underlying the plaintiffs' complaint are not in dispute.

## FACTS

On February 4, 2002, the plaintiffs' nine-year-old daughter, Meghan DeBlasio, a pedestrian, was struck by a vehicle driven by the debtor. Meghan died three days later in the hospital. At the time of the accident, the debtor was driving an unregistered and uninsured vehicle while her driving privileges were suspended. The debtor was charged with numerous motor vehicle violations under Title 39 of the New Jersey Statutes,[2] and was indicted under N.J.S.A. 2C:40–22, Operating a Motor Vehicle During a Period of Suspension and Causing Death to Another.

One day after the accident, on February 5, 2002, Gina and her husband Gregory Groff filed a joint petition under Chapter 7 of the Bankruptcy Code. The debtors later amended their petition to list the DeBlasios as unsecured creditors. On April 30, 2002, the plaintiffs filed this adversary proceeding against Gina Groff.[3]

As is relevant here, on July 15, 2002, Gina Groff pled guilty in New Jersey Superior Court to one count of violating N.J.S.A. 2C:40–22 and was given a five year probationary period, fines of $206.00 and a one year revocation of her driver's license.[4]

On January 15, 2003, the debtor moved for summary judgment to dismiss the adversary complaint, asserting that the accident was not a willful and malicious act. The debtor admits that she was driving an uninsured, unregistered vehicle without a valid driver's license at the time of the accident. However, she contends that her guilty plea under N.J.S.A. 2C:40–22 does not satisfy the willful and malicious standard under 11 U.S.C. § 523(a)(6).

In response, the plaintiffs filed a cross motion for summary judgment. The plaintiffs argue that the debtor knowingly, willfully and intentionally drove the vehicle without a license, registration or insurance. They assert that the debtor had engaged in a practice of applying for insurance and then failing to pay the full premiums, causing the cancellation of the insurance. Plaintiffs contend that the debtor "knowingly, willfully, intentionally, and consciously disregarded the laws of the State of New Jersey" in operating her

---

U.S.C. § 523(a)(9), was dismissed on summary judgment, without objection.

**2.** The debtor was charged with careless driving under N.J.S.A. 39:4–97; reckless driving under N.J.S.A. 39:4–96; operating an unregistered vehicle under N.J.S.A. 39:3–4; driving with a suspended driver's license and registration under N.J.S.A. 39:3–40; operating a motor vehicle without insurance under N.J.S.A. 39:6B–2; failure to surrender suspended registration and license plates under N.J.S.A. 39:5–35; failure to use approved child restraints under N.J.S.A. 39:3–76.2a, and failure to wear a seatbelt under N.J.S.A. 39:76.2f.

**3.** Plaintiffs' complaint asserts two causes of action under section 523 of the Bankruptcy Code and seeks to deny the debtor her discharge. It should be noted that section 523 is a nondischargeability section and not a denial

of discharge provision. *See* 11 U.S.C. § 727. The complaint is treated as a quest to declare the debt due to the plaintiffs to be nondischargeable.

**4.** She also pled guilty to driving with a suspended license and registration and with no insurance. For driving with a suspended license, she received a 13 month suspension of her driver's license, concurrent with the suspension under N.J.S.A. 2C:40–22, $500.00 in fines, $30.00 in costs and 45 days incarceration. For driving with a revoked registration, her license was suspended for one day, consecutive to the above penalty. For driving with a suspended registration, her driver's license was suspended for one year, concurrent as above, and she was fined $300.00 plus $30.00 in court costs.

motor vehicle and in striking and killing their daughter. They maintain that the debtor's level of culpability, which they assert is "knowing," was established by her guilty plea in the New Jersey Superior Court, and that she is collaterally estopped from relitigating the issue here.

## *DISCUSSION*

Summary judgment is appropriate where the moving party is entitled to judgment, as a matter of law, and where there exists no genuine dispute as to any material fact.[5] *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993); *Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 112 (3d Cir.1996); *Gottshall v. Consolidated Rail Corp.*, 56 F.3d 530, 533 (3d Cir.1995). Here, in the absence of a genuine dispute as to any material fact, we turn to the applicable law.

 The plaintiffs are correct that collateral estoppel principles apply in bankruptcy proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979) (applying collateral estoppel to nondischargeability proceeding). To estop a party from relitigating an issue, the movant must show that: "(1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment." *In re Docteroff*, 133 F.3d 210, 214 (3d Cir.1997); *Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir.1999). The debtor's guilty plea qualifies as "actual litigation", and her conviction represents a valid and

final judgment. The issue of the application of collateral estoppel here is whether the elements of N.J.S.A. 2C:40–22, to which the debtor pled guilty, establish that the debtor committed a "willful and malicious injury" within the meaning of 11 U.S.C. § 523(a)(6).

N.J.S.A. 2C:40–22 provides in relevant part:

a. A person who, while operating a motor vehicle in violation of R.S. 39:3–40, is involved in an accident resulting in the death of another person, shall be guilty of a crime of the third degree, in addition to any other penalties applicable under R.S. 39:3–40. The person's driver's license shall be suspended for an additional period of one year, in addition to any suspension applicable under R.S. 39:3–40. The additional period of suspension shall commence upon the completion of any term of imprisonment.

. . .

c. The provisions of N.J.S. 2C:2–3 governing the causal relationship between conduct and result shall not apply in a prosecution under this section. For purposes of this offense, the defendant's act of operating a motor vehicle while is driver's license or reciprocity privilege has been suspended or revoked or who operates a motor vehicle without being licensed to do so is the cause of death or injury when:

(1) The operation of the motor vehicle is an antecedent but for which the death or injury would not have occurred; and

(2) The death or injury was not:

(a) too remote in its occurrence as to have a just bearing on the defendant's liability; or

(b) too dependent upon the conduct of another person which was unrelated to the defendant's operation of a

---

5. Bankruptcy Rule 7056 makes Fed.R.Civ.P. 56 applicable to adversary proceedings.

motor vehicle as to have a just bearing on the defendant's liability.

d. It shall not be a defense to a prosecution under this section that the decedent contributed to his own death or injury by reckless or negligent conduct or operation of a motor vehicle.

N.J.S.A. 2C:40–22. The elements of the crime under subsection (a) are as follows: 1) the defendant must have been operating a motor vehicle in violation of N.J.S.A. 39:3–40 (driving while suspended); 2) the defendant was involved in an accident resulting in the death of another person, and 3) the death was not too remote in its occurrence or too dependent on the conduct of another person to have a just bearing on the defendant's liability. The statute does not address the issue of the extent of culpability required to convict a person for this crime.

For criminal statutes, including N.J.S.A. 2C:40–22, that do not specifically address a culpability requirement, N.J.S.A. 2C:2–2(c)(3) provides that "[a] statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime with the culpability defined in paragraph b.(2) of this section." Culpability is defined in paragraph (b)(2) as follows:

A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result.

N.J.S.A. 2C:2–2(b)(2).

The question becomes whether the provisions of N.J.S.A. 2C:40–22 clearly indicate a legislative intent to impose strict liability against the defendant, or whether the statute requires the defendant to "know" that if she operates a vehicle while her driving privileges are suspended, it is practically certain that her conduct will cause injury to another person. The language of the statute, as well as two commentaries, unequivocally support the former, i.e., a clear legislative intent to impose strict liability, and I so conclude.

■ To convict under N.J.S.A. 2C:40–22(a), it is only necessary to establish that a fatality occurred, that the defendant was driving while suspended, and that but for the operation of the motor vehicle, the death would not have occurred. The nature of the operation of the vehicle is not implicated. There is no specification about negligence or recklessness or willful conduct on the part of the driver, but only that the driver was driving while suspended.

The Editor's Comment appended to N.J.S.A. 2C:40–22 in the New Jersey Criminal Code Annotated is supportive of this position. This Comment explains that:

The section supplements sections on vehicular homicide and assault by auto. But, unlike them, a finding of reckless driving is not necessary for conviction, only a finding of driving with a suspended license. The section makes it a crime for a person to cause serious bodily injury or death to another by driving while the person's driving license is suspended or revoked. No mental element is specified, so the element of knowledge would apply to the element of driving on the revoked list. 2C:2–2c(3). However, the nature of the causation provision indicates that there is strict liability as to the accident and injuries. The strict liability causation provision is derived from 2C:35–9, Strict liability for drug-

induced deaths. It is not clear how the provision will be applied in regard to motor vehicle accidents. In that context, subsections c(2) and d seem to conflict with some sort of undefined comparative fault dividing line between culpability and nonculpability under paragraph c(2)(b), but with no such dividing line where the decedent contributed to his own death or injury.

JOHN M. CANNEL, NEW JERSEY CRIMINAL CODE ANNOTATED, TITLE 2C (GANN 2002), Comment to N.J.S.A. 2C:40–22.[6]

The plaintiffs suggest that the uncertainty expressed in the Editor's Comment about "how the provision will be applied in the motor vehicle accidents" supports their argument that culpability is a necessary element of the crime. This argument must be rejected. The uncertainty pertains only to the circumstance described in N.J.S.A. 2C:40–22(c)(2)(b), where, for purposes of causal relationship, the comparative fault between the conduct of the defendant and the conduct of another person, other than the decedent, which was unrelated to the defendant's driving must be examined.

In further support for the proposition that the clear legislative intent of N.J.S.A. 2C:40–22 is to impose strict liability upon a defendant who is involved in a fatal motor vehicle accident while driving while suspended, the Commentary to the New Jersey Practice Series explains that:

... [T]he third degree crime of causing death while driving with a suspended license .... require[s] the state to prove that the defendant acted knowingly. The "knowingly" should be limited to proving that at the time the defendant was operating the vehicle she knew her driver's license was refused, or she knew that her driver's license or reciprocity privilege had been suspended or revoked or that she had been prohibited from obtaining a driver's license. The state need not prove she knowingly caused the accident or knowingly caused the death.

33A GERALD D. MILLER, NEW JERSEY PRACTICE, CRIMINAL LAW § 31.10 (WEST 2002).

■ In this case, the debtor's guilty plea to N.J.S.A. 2C:40–22 signified her admission that she was operating a motor vehicle while her driving privileges were suspended, that she knew her driving privileges were suspended, that she was involved in a motor vehicle accident which resulted in Meghan DeBlasio's death, and that Meghan's death was not too remote in its occurrence or too dependent on the conduct of another person to bear on the debtor's liability.

Turning to the Bankruptcy Code, section 523(a)(6) provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6). Section 523(a)(6) requires both a "willful" and a "malicious" act by the debtor.

---

**6.** With reference to N.J.S.A. 2C:35–9, Strict Liability for Drug–Induced Deaths, from which the strict liability causation provision is derived, the Legislative Commentary about the statute reflects that "[t]o maximize the deterrent effect, this offense is made one of strict liability, meaning that the State need not prove in a prosecution arising under this section that the defendant intended, knew or even should have known that death would or was likely to have resulted from his unlawful act of manufacturing, distributing or dispensing." 1987 Legislative Commentary to N.J.S.A. 2C:35–9.

■■ The plaintiffs contend that "[t]he word 'willful' means 'deliberate and intentional,' a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury". Plaintiffs cite to *In·re Braen*, 900 F.2d 621, 626 n. 4 (3d Cir.1990) to support their position. According to the plaintiffs, the debtor's wrongful act of driving while suspended led to the fatal motor vehicle accident. The debtor, relying on *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), contends that section 523(a)(6) requires an intentional injury, not merely a deliberate or intentional act that leads to injury. While the more recent pronouncement by the Supreme Court in *Geiger* controls, the plaintiffs could not establish non-dischargeability under either *Geiger* or *Braen*.

■ In *Geiger*, the United States Supreme Court addressed the specific question of whether section 523(a)(6) included acts done intentionally that cause injury, the plaintiffs' position herein, or only those acts done with the actual intent to cause the injury, the debtor's position herein. The Court reasoned that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* at 61, 118 S.Ct. at 977 (emphasis in original).

[A] more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic—could fit the description.... A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed."

*Id.* at 62, 118 S.Ct. at 977 (quoting *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915)). Therefore, plaintiffs must establish that the debtor's action in driving her automobile while suspended was an act done with the intent to cause injury, and was not merely a deliberate or intentional act of driving while suspended that led to an injury. *See also In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999) (there must be a desire to cause injury or a substantial certainty that it would occur); *In re Conte*, 33 F.3d 303 (3d Cir.1994); *In re Slomnicki*, 243 B.R. 644, 649 (Bankr.W.D.Pa.2000). Even under the *Braen* formulation, there is no basis presented to conclude that the debtor's deliberate and intentional act of driving while suspended necessarily caused injury.

■ The plaintiffs correctly contend that the debtor did knowingly, willfully, intentionally and consciously drive her vehicle without a license, registration or insurance, all in violation of New Jersey state law. However, the debtor's illegal operation of a vehicle does not equate with intent to cause injury. No competent proofs have been offered to support that contention, or even to reflect upon the manner in which the debtor was operating her vehicle at the time of the accident.

On this record, I conclude that the elements of section 523(a)(6) have not been established. For the reasons advanced, the plaintiffs' motion for summary judgment is denied in all respects. The debtor's motion for summary judgment and

dismissal of the adversary proceeding is granted. An order is enclosed.